# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DAVID FREEMAN,          )

                          )

         Petitioner,        )

                          )

      v.               )     Civil Action Number

                          )     2:06CV122-MHT-WC

RICHARD F. ALLEN,     )

Commissioner of the Alabama   )

Department of Corrections,    )

                          )

        Respondent.     )

# RESPONDENT'S BRIEF ON THE MERITS

Troy King
*Attorney General*

Michael A. Nunnelley
*Assistant Attorney General*

Counsel for Respondent

Address of Counsel:

Office of the Attorney General
Capital Litigation Division
Alabama State House
11 South Union Street
Montgomery, AL  36130
(334) 242-9242 Office
(334) 353-3637 Fax
mnunnelley@ago.state.al.us

July 19, 2007

# TABLE OF CONTENTS

INTRODUCTION.. ....................................................................................... 1

STANDARD OF REVIEW ......................................................................... 3

ARGUMENT…….............................................................................................. 5

I.    The Claim That Freeman's Conviction Violated Double
Jeopardy When He Was Tried After An Earlier Trial On
The Same Charges Ended In A Mistrial ............................................... 5

II.   The Claim That Freeman's Statement Should Have Been
Suppressed Because It Was Obtained In Violation Of His
Right To Remain Silent Under *Miranda v. Arizona*........................... 10

III.  The Claim That Counsel Did Not Receive Effective
Assistance Of Trial Counsel ................................................................. 17

      A.    General principles of ineffective assistance law ...................... 17

      B.    The issues of specific pleading, fair presentation, and
            entitlement to a new evidentiary hearing................................. 21

            1.    *The Court of Criminal Appeals committed no*
                  *error in finding that Freeman failed to meet*
                  *his pleading obligations*................................................. 22

            2.    *Freeman's Rule 32 Petition Did Not Satisfy*
                  *The Full And Fair Presentation Requirement* .............. 30

            3.    *Freeman Has Not Demonstrated that He Is*
                  *Entitled To The Consideration Of Additional*
                  *Facts, Much Less Further Evidentiary*
                  *Hearings*........................................................................... 35

      C.    The individual claims are all procedurally defaulted
            or meritless ............................................................................... 41

       *1.*     *The Sub-Claim That Trial Counsel Failed To Challenge The Prosecution's Forensic Odontology Evidence* ........................................ 41

       *2.*     *The Sub-Claim That Trial Counsel Were Ineffective For Deposing Dr. Guy Renfro* .................... 47

       *3.*     *The Sub-Claims That Trial Counsel Failed To Investigate Evidence Of Freeman's Mental Health And  Neurological Impairments* ......................... 49

       *4.*     *The Sub-Claim That Trial Counsel Failed To Introduce Evidence Of Freeman's Adaptability To Prison* .................................... 54

IV.    The Claim That Freeman Was Denied His Right To A Fair Sentencing Due To The Admission Of The Odontological Evidence…….. ................................................... 57

V.     The Claim That Freeman Received Ineffective Assistance Of Appellate Counsel ........................................................ 60

VI.    The Claim That Prosecutorial Misconduct Denied Freeman His Right To A Fair Trial ................................................ 64

VII.   The Claim That Freeman Was Denied The Right To Trial By Jury……... ................................................................. 70

CONCLUSION…….. ........................................................... 75

CERTIFICATE OF SERVICE .................................................. 76

## INTRODUCTION

On February 28, 2006, the district court referred this case to Magistrate Judge Vanzetta Penn McPherson "for all procedural and discovery matters in this case." (Doc. 6)    After conducting a case management conference, Magistrate Judge McPherson entered an order setting a briefing schedule.  (Doc 39)  Due to the retirement of Magistrate Judge McPherson, this case was subsequently reassigned to Magistrate Judge Wallace Capel, Jr., on November 29, 2006.  On March 19, 2007, Respondent filed its brief on procedurally defaulted claims.  On April 16, 2007, Freeman filed his brief responding to the procedural default claims raised by Respondent and addressing the merits of all claims, including the need for an evidentiary hearing on specific claims.  In the instant brief, Respondent will address the procedural default issues and the merits of the claims, including whether an evidentiary hearing should be held on specific claims.

Freeman asserts in his brief on the merits that he is entitled to relief based on many of the allegations in his habeas petition.  As set forth below, these claims are either procedurally defaulted or are without merit.  In addition, Freeman has failed to show that the state court's adjudication of these claims is contrary to or an unreasonable application of clearly

established federal law as established by the Supreme Court of the United States. This Court, therefore, should deny the habeas petition.

# STANDARD OF REVIEW

The Eleventh Circuit Court of Appeals set forth the following

standard of review for habeas cases:

> Because we are reviewing a final state habeas judgment, "our review is greatly circumscribed and is highly deferential to the state courts" under section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002).

> "When reviewing the district court's denial of a habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000). A federal court may not grant habeas relief unless the decision of the state court either was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

> Our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*. § 2254(e).

> Our review of legal conclusions by the state courts is also especially deferential. A state court decision is contrary to the clearly established precedent of the Supreme Court "(1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent." *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (citing

3

*Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000)).  An unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Under the unreasonable application clause of section 2254(d), a federal habeas court may not issue the writ on the ground that, in its independent judgment, the state court applied federal law incorrectly.  *See Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).  This clause imposes a " 'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n. 7, 138 L.Ed.2d 481 (1997)).  The habeas applicant must show that the state court applied federal law to the facts of his case in an objectively unreasonable manner.  *See id*. at 25, 123 S.Ct. at 360.  An "unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522.  Even clear error, standing alone, is not a ground for awarding habeas relief.  *See Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

*Stephens v. Hall*, 407 F. 3d 1195, 1201-1202 (11th Cir. 2005).

## ARGUMENT

**I.**    **The Claim That Freeman's Conviction Violated Double Jeopardy When He Was Tried After An Earlier Trial On The Same Charges Ended In A Mistrial.**

Freeman contends in section I on pages 10-12 of the habeas petition that he was twice put in jeopardy of life and limb when his trial was permitted to go forward after a previous proceeding ended in mistrial in the absence of manifest necessity.[1]

As set forth in the State's answer, Freeman's double jeopardy claim is procedurally defaulted because it was not raised on direct appeal.  (Answer, pp. 2-5)  Freeman does not attempt to show prejudice or a fundamental miscarriage of justice to overcome the procedural defaults of this claim.  Instead, Freeman argues that he was not obligated to raise the claim on direct appeal because he raised it in mandamus petitions before the Alabama Court of Criminal Appeals and the Alabama Supreme Court.

Even if this claim is considered to be exhausted, Freeman is not entitled to relief.  Freeman's motion to dismiss the indictment was denied by the trial court, and both the Alabama Court of Criminal Appeals and the Alabama Supreme Court declined to grant mandamus relief.  When a habeas

---

[1] Freeman's brief on the merits does not address the claims in order.  This brief addresses the claims in the same order as discussed by Freeman, and therefore the brief numbering does not match the claim numbering.

petitioner's claim has been adjudicated on the merits in state court proceedings, 28 U.S.C. §2254(d) forecloses relief unless either subsections 2254(d)(1) or (d)(2) are found to be applicable. *Early v. Packard*, 537 U.S. 3, 7 (2002). The burden of showing that an issue falls within subsections (d)(1) or (d)(2) is upon the petitioner. *Woodford v. Visciotte*, 537 U.S. 19 (2002). Freeman has not established that the state court's determination of this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the State court's determination of this issue "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2).

The Constitution protects the defendant's right to have the trial completed by a particular tribunal "by requiring that a trial judge declare a mistrial without the consent of the defendant only after it determines that mistrial is a manifest necessity." *Abdi v. Georgia*, 744 F.2d 1500, 1503 (11th Cir. 1984). "Manifest necessity" has not been precisely defined, but has been described as a "high degree of necessity." *Arizona v. Washington*, 434 U.S. 497, 506-07 (1978); *Abdi*, 744 F.2d at 1503. In determining the existence of manifest necessity for a mistrial, a trial court must exercise its

sound discretion. *Venson v. Georgia*, 74 F.3d 1140, 1145 (11th Cir. 1996).

In exercising this discretion, "unquestionably an important factor to be

considered is the need to hold litigants on both sides to standards of

responsible professional conduct in the clash of an adversary criminal

process." *United States v. Jorn*, 400 U.S. 470, 484 (1971).

As a preliminary matter, the record strongly suggests that counsel for

Freeman caused—and even consented to—the mistrial.  By the time of the

hearing at which the mistrial was granted, the trial had already been

delayed—one day at a time—for nearly a week.  (Volume 19 at 365-66)

Lead defense counsel Allen Howell had been ill and under a doctor's care,

and the trial court had "continued this case on a daily basis awaiting a report

of [his] condition[.]"  (Id. at 366)  Lead counsel specifically stated that he

had been hospitalized on three prior occasions with the same symptoms, and

that he did not feel he could "do my best job today[.]"  (Id.)  Co-counsel

noted that his wife, a nurse, believed Howell should be in the hospital.  He

also noted that it was his first capital case and therefore Howell's assistance

was essential.  The prosecutor noted her preference to continue, but

recognized that Howell was still very ill and "we wish the defendant to have

competent and effective counsel."  (Id. at 367)  When the court inquired

about Freeman's wishes, it was informed that Freeman "wants [Howell] to be one hundred percent[.]"

Though the trial court, in expressing its reluctance to grant yet another wait-and-see continuance, stated that "it's going to be difficult, if not impossible" for Howell to complete the case the next day, it is apparent from the record that the court's concern extended beyond just one day. **Howell had provided no indication that there was any specific date in the near future by which his sufficient recuperation would have been certain or even likely.** Indeed, statements by his co-counsel that Howell should have been in the hospital—and Howell's admission that he had already been in the hospital three times with the same illness—suggested strongly that all parties believed a significant break was necessary to insure Howell's full participation. Accordingly, the court granted a mistrial to "re-schedule this matter for trial upon the completion of the recuperation of counsel." (Id. at 368)

Upon this statement by the court, counsel for Freeman expressed *no objection or disagreement at all* with the court's determination. Indeed, the hearing continued for some time, covering five more pages of record transcript, during which time the lawyers, including Mr. Howell, all discussed when it would be best to retry the case. (Id. at 369-73) The court

also considered the parties wish to agree on the record to the same stipulations at the new trial, granted the State's motion withdraw the evidence, and granted the defense motion to withdraw its exhibits. *Trial counsels' conduct at the hearing certainly gave the court no indication that they opposed the mistrial, and indeed suggested that they considered the ruling to be to the defendant's benefit.*

Counsel's first objection came in the form of a motion to dismiss the indictment, filed three weeks after the above-described hearing, and just days before the new trial was scheduled to commence. (Volume 18 at 144) By this time, the previous jury had already been dismissed and preparations for the new trial had long been underway. Because trial counsel never expressed opposition to the mistrial when it was still possible for the court to reconsider the ruling, it is improper to apply the *Abdi* "manifest necessity" standard to review of this claim. Certainly, the court would not have granted a mistrial *for defense counsel's benefit* had it believed that counsel might use that act of discretion to avoid prosecution altogether.

Even under the "manifest necessity" standard, the trial court's actions were plainly reasonable. Lead counsel—the only experienced attorney for the defense—was seriously ill and was unable to provide the court any assurance that his health was likely to improve. The valuable time of the

jury, witnesses, and counsel had already been wasted for a week, and there was no guarantee that further reasonable delay would allow the case to go forward. The court was within its sound discretion to determine that there existed a "high degree of necessity" to grant a mistrial in order to protect the resources of the court and—most pertinent to its decision—the interests of the defendant. *See Arizona*, 434 U.S. at 506-07.

Freeman has not established that the trial court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2). Federal habeas relief is therefore foreclosed.

**II.    The Claim That Freeman's Statement Should Have Been Suppressed Because It Was Obtained In Violation Of His Right To Remain Silent Under *Miranda v. Arizona*.**

Freeman asserts in section II of the habeas petition, pages 13-15, that his statement should have been suppressed because it was obtained in violation of his right to remain silent. Freeman contends that his right to remain silent was violated when the State failed to honor his right to cut off questioning.

Freeman raised this issue on direct appeal.  The Alabama Court of

Criminal Appeals stated the following concerning this claim:

> Freeman contends that his post-arrest statements to police were improperly admitted at trial because, he says, the police continued to question him about the murders after he asserted his right to remain silent, in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
>
> The record reveals that Freeman was initially advised of his Miranda rights when he was arrested at his apartment on March 12, 1988.  Officer Terry Jett with the Montgomery Police Department testified that after Freeman was taken from the apartment to police headquarters for questioning, he was again advised of his Miranda rights before he was questioned. Jett testified that Freeman acknowledged that he understood those rights, that he signed a waiver to that effect, and that he agreed to talk to the police.  In his March 12 statement to Jett, which was also audiotaped, Freeman denied any knowledge of, or participation in, the murders of Mary Gordon and Sylvia Gordon.
>
> The record further reveals that on March 14, 1988, Detective Gary Graves, who at that time was a detective with the Montgomery Police Department and the case agent in charge of the Gordon case, went to the jail to question Freeman and to photograph bite marks on Freeman's arm.  Graves testified that he advised Freeman of his Miranda rights, and that Freeman signed the rights waiver form stating that he understood his rights and that he agreed to waive those rights and talk to the police.  Graves testified that he then asked Freeman what happened on the day of the murders. Graves stated that in response to that question, Freeman told him "he couldn't talk about it." (R. 598.)  In an effort to clarify Freeman's comment, Graves then said to Freeman, "If you can't talk about it, can you write it for me?" (R. 599.)  Graves testified that Freeman said that he would, and he then proceeded to handwrite two statements denying any involvement in the murders in the first statement, but admitting

in the second statement to killing both Mary Gordon and Sylvia Gordon.

Freeman maintains that he invoked his right to remain silent when he told Graves that "he couldn't talk" about the murders. We do not, as Freeman does, interpret this statement to be a clear and unequivocal invocation of Freeman's right to remain silent. As we stated in *Slaton v. State*, 680 So.2d 879 (Ala. Crim. App. 1995), aff'd, 680 So.2d 909 (Ala. 1996), *cert. denied*, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997):

> "The United States Supreme Court has held that police officers must inform people of their constitutional rights before beginning custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Included in the right to remain silent is a right to cut off questioning. *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628. When a defendant invokes his right to remain silent, that request must be 'scrupulously honored.' *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

> "This court recently stated that whether someone has invoked his right to remain silent is determined on a case-by-case basis.

> " 'Whether there was a waiver of the right to remain silent and the right to counsel and whether the confession was knowingly, voluntarily, and intelligently made must be decided from the particular facts and circumstances of each case, including the background, experience, and conduct of the accused-the totality of the circumstances.'

> " *Holmes v. State*, 598 So.2d 24, 26 (Ala. Crim. App. 1992); *see also Thomas v. State*, 373 So.2d 1167 (Ala. 1979), *vacated on other grounds*, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); *Magwood v. State*, 494 So.2d 124 (Ala. Crim. App. 1985), *aff'd*, 494 So.2d 154 (Ala.), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).

12

"In this case, the police were questioning an admittedly scared 17-year-old who had just been arrested for murder and rape. He was visibly upset but had given no indication that he did not want to cooperate with the detectives and appeared to be readily responding to their questions. We are not persuaded that Slaton's response, 'Oh God, I don't feel like going through all this,' was an unequivocal invocation of his right to remain silent. It does not strike us as any kind of conscious request that he be allowed to remain silent. Instead, Slaton's comment seems a natural outburst borne of the fear and anxiety created by the circumstances in which he found himself. Therefore, we hold that Slaton's statement was not an invocation of his right to remain silent, that his Miranda rights were not violated, and that his statement was properly used at trial."

680 So. 2d at 886-87. " 'Once informed of *Miranda* rights, an accused has the burden of indicating in some manner his wish to remain silent.' " *Ex parte Slaton*, 680 So.2d 909, 914 (Ala. 1996), *cert. denied*, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997), *quoting Lightbourne v. Dugger*, 829 F.2d 1012 (11th Cir.1987), *cert. denied*, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); *see also Smith v. State*, 756 So.2d 892, 932 (Ala. Crim. App. 1998). "When a purported invocation of a Fifth Amendment privilege is ambiguous, the police may question the accused for the narrow purpose of clarifying the equivocal request." *Beard v. State*, 612 So.2d 1335, 1341 (Ala. Crim. App. 1992) (citations omitted).

Here, Freeman's response to Graves's question was not an unequivocal invocation of his right to remain silent. The response, instead, appears to be Freeman's simply saying that he did not like talking about the brutal murders. Freeman was, however, more than willing to handwrite a statement about the murders. As the State correctly points out in its brief to this court, Freeman's response to police was not an assertion of his right to remain silent, but instead indicated Freeman's desire to conduct the interview the way he wanted it conducted. This is further evidenced, as the State also points out in its brief, by

13

> Freeman's refusing to make a videotaped statement, while
> agreeing to make an audiotaped statement. Jett's and Graves's
> testimony at trial clearly indicated that Freeman wanted to
> answer their questions. In fact, both Jett and Graves testified
> that Freeman was cooperative throughout all of the questioning,
> and that he was responsive to all of their questions. For these
> reasons, we conclude that Freeman did not indicate that he
> wished to remain silent; thus, there was no violation of his
> Miranda rights in this regard.

*Freeman v. State*, 776 So.2d 160, 173-75 (Ala. Crim. App. 1999).

The merits of this claim were reviewed and rejected by the Alabama

Court of Criminal Appeals. When a habeas petitioner's claim has been

adjudicated on the merits in state court proceedings, 28 U.S.C. §2254(d)

forecloses relief unless either subsections 2254(d)(1) or (d)(2) are found to

be applicable. *Early v. Packard*, 537 U.S. 3, 7 (2002). The burden of

showing that an issue falls within subsections (d)(1) or (d)(2) is upon the

petitioner. *Woodford v. Visciotte*, 537 U.S. 19 (2002). Freeman has failed

to sustain this burden of proof. Freeman has not established that the state

court's determination of this issue "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or that the

state court's determination of this issue "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2).

Federal habeas relief is therefore foreclosed.

Freeman asserts that his statement was unconstitutionally obtained in

violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Michigan v.*

*Moseley*, 423 U.S. 96 (1975), because his right to stop questioning was not

"scrupulously honored" by the police. (Doc 64 46-50) This allegation is

completely without merit and is unsupported by the record during the

suppression hearing.

First, the State disputes that the police did not "scrupulously honor"

Freeman's assertion of his right to end questioning. Freeman did not

unequivocally request to end the interrogation. Rather, Officer Gary Graves

testified that Freeman stated he "couldn't talk about it [the murders]."

When asked if he could write it instead, Freeman said he could. (Vol. 40 at

599) The Alabama Court of Criminal Appeals correctly found that this

statement "appears to be Freeman's simply saying that he did not like

talking about the brutal murders," an interpretation supported by the fact

that he was "more than willing to handwrite a statement about the murders."

*Freeman*, 776 So.2d at 175. It is unreasonable to interpret Freeman's

comment as invocations of the right to silence when he so quickly

responded to the alternative provided by Officer Graves. Freeman has not

pointed to any other testimony in the record that demonstrates that this finding is unreasonable. The reasonableness of this interpretation is also supported, as the court noted, by the fact that Freeman objected to a video statement but had no problem with providing an audio recording. *Id*.

Freeman's contention that Officer Graves must have understood the statement as an invocation of the right to silence is nonsensical. Freeman claims that had Graves believed the statement was ambiguous, he would have "continued to press for an oral statement." (Doc. 64 at 49) But the Court of Criminal Appeals found that Freeman's statement "indicated Freeman's desire to conduct the interview the way he wanted it conducted." *Freeman*, 776 So.2d at 175. The officer, interpreting the statement thusly, would have been foolish to press for an oral statement, when Freeman might have been significantly more willing to provide a written statement—as it turns out, he was.

Freeman claims to argue that the court committed an unreasonable application of established law, but in reality the argument is merely a restatement of his argument that the factual findings were unreasonable. Or as Freeman argues, "the Alabama Court of Criminal Appeals *articulated the correct law*, but unreasonably applied that law by *assuming facts unsupported by the record* and permitted those factual errors to drive its

legal analysis." (Doc. 64 at 53) (emphasis added). Plainly, Freeman's complaint is with the Alabama Court of Criminal Appeals's findings of facts; he points to no case that establishes that the court's decision was in error *given its factual determinations*.

The Alabama Court of Criminal Appeals did not err when it denied relief on this claim. Freeman's argument to the contrary is without merit.

## III. The Claim That Counsel Did Not Receive Effective Assistance Of Trial Counsel.

Freeman asserts in section IV of his habeas corpus petition, on pages 20-46, that his trial counsel were ineffective. Respondent will address each allegation as these claims were raised in the habeas petition. Freeman also attempts to introduce a number of new allegations that were never presented to the state courts in support of his claims. Unfortunately, Freeman has failed to state compelling grounds why this Court should consider these facts that he failed to present in state collateral proceedings.

### A. General principles of ineffective assistance law.

The Eleventh Circuit Court of Appeals stated the following concerning ineffective assistance of counsel claims: "[W]hether counsel's performance is constitutionally deficient depends upon the totality of the circumstances viewed through a lens shaped by the rules and presumptions set down in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, (1984),

and its progeny." *Waters v. Thomas*, 46 F. 3d 1506, 1511 (11th Cir. 1995).

Under *Strickland*, there are two components of such a claim.  First, the

defendant must establish that counsel's performance was constitutionally

deficient, which means it was "outside the wide range of professionally

competent assistance."  466 U.S. at 690.  In making that determination, "the

court should recognize that counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of

reasonable professional judgment."  466 U.S. at 690.  In addition, the court

held that an attorney's strategic choices, made after reasonable investigation,

are virtually beyond challenge and that whether an attorney's strategic

choices were reasonable may be determined, or substantially influenced, by

what he was told by the defendant.  466 U.S. at 690.  Given the deference

that counsel's performance is due, the cases in which the writ is granted are

"few and far between."  *Chandler v. United States*, 218 F. 3d 1305, 1313

(11th Cir. 2000)(en banc).  The Eleventh Circuit Court of Appeals also

stated the following in *Grayson v. Thompson*, 257 F. 3d 1194, 1216  (11th

Cir. 2001):

> Thus, in order to show that counsel's performance was
> unreasonable, the petitioner must establish that *no competent
> counsel would have taken the action that his counsel did take*.
> (emphasis in original)

Second, a defendant must establish the prejudice requirement, which

requires that he prove "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." 466 U.S. at 694. The burden is on the habeas petitioner to

establish both of these components. *Atkins v. Singletary*, 965 F.2d 952, 958

(11th Cir. 1992).

The Eleventh Circuit also stated the following concerning a

defendant's burden of proving that his attorney was ineffective:

> The presumption impacts on the burden of proof and continues
> throughout the case, not dropping out just because some
> conflicting evidence is introduced. "Counsel's competence …
> is presumed, and the [petitioner] must rebut this presumption by
> proving that his attorney's representation was unreasonable
> under prevailing professional norms and that the challenged
> action was not sound strategy." *Kimmelman v. Morrison*, 477
> U.S. 365, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305
> (1986)(emphasis added)(citations omitted). An ambiguous or
> silent record is not sufficient to disprove the strong and
> continuing presumption. Therefore, "where the record is
> incomplete or unclear about [counsel's] actions, we will
> presume that he did what he should have done, and that he
> exercised reasonable professional judgment." *Williams,* 185
> F.3d at 1228; see also *Waters*, 46 F.3d at 1516 (en banc)(noting
> that even though testimony at habeas evidentiary hearing was
> ambiguous, acts at trial indicate that counsel exercised sound
> professional judgment). The presumption about which we write
> here is not some presumption that the particular defense lawyer
> in reality focused on and, then, deliberately decided to do or not
> to do a specific act. Instead, *the presumption to which we refer*
> *is the presumption that what the particular defense lawyer did*
> *at trial – for example, what witnesses he presented or did not*
> *present – were acts that some reasonable lawyer might do*. The

Supreme Court has instructed that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 104 S.Ct. at 2065. This presumption is like the "presumption of innocence" in a criminal trial, in which "the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty." *Black's Law Dictionary* 823 (6th ed.1991). This presumption of competence must be disproved by a petitioner. Petitioner continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel. See *Strickland*, 104 S.Ct. at 2064 (stating that "defendant must show that counsel's performance was deficient" and that defendant must also show prejudice). Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petition. (Emphasis added)

*Chandler v. United States*, 218 F. 3d 1305, n. 15 (11th Cir. 2000)(en banc).

The Eleventh Circuit Court of Appeals also stated the following in

*Rogers v. Zant*, 13 F.3d 384 (11th Cir. 1994), concerning ineffective

assistance of counsel claims:

A jury trial is, by its nature, an enterprise that is filled with imponderables from the viewpoint of a trial lawyer. It is an undertaking that calls not only on the lawyer's head, but also on his heart and nerve. At times in the trial arena, audacity or imagination or patience accomplish more than pure logic might suggest is possible. The truth is that it is often hard for even a good lawyer to know what to do. Trying cases is no exact science. And, as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that allows for great precision or for a categorical approach. When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v.*

*Singletary*, 965 F.2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices … that are arguably dictated by a reasonable trial strategy. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993).

Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial … worked adequately." See *White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

These cases provide the framework for analyzing Freeman's ineffective assistance of counsel claims. Freeman's attorney's representation was not deficient and he was not prejudiced by their actions.

### B.    The issues of specific pleading, fair presentation, and entitlement to a new evidentiary hearing.

The State will first address Freeman's contentions that (1) the Alabama Court of Criminal Appeals erred in holding that he failed to comply with Alabama's pleading requirements; (2) the State has erroneously suggested that Freeman did not fully and fairly present his ineffective assistance of counsel claims in state court because his Rule 32 petition pleadings were held insufficient by the Court of Criminal Appeals; and (3) that he is entitled to a second evidentiary hearing where he failed to develop

the record in state court and in many cases failed to even properly plead the claims or present **any** evidence on the claims.

>    1.    *The Court of Criminal Appeals committed no error in finding that Freeman failed to meet his pleading obligations.*

Freeman correctly states that the Rule 32 court conducted an evidentiary hearing on each of his ineffective assistance of trial counsel claims and denied relief as to each on the merits. The Alabama Court of Criminal Appeals, however, determined that the granting of an evidentiary hearing was improper because all of the ineffective assistance of trial counsel claims were insufficiently plead. The Alabama Court of Criminal Appeals stated the applicable law and its reasoning as follows:

>    Rule 32.3, Ala.R.Crim.P., states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Ruie 32.6(b), A1a.R.Crim.P. states that " [t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. " As this Court noted in *Boyd v. State*, [Ms. CR-02-0037, September 26, 20031 -So. 2d -(Ala. Crim. App. 2003):

>>    " 'Rule 32.6 (b) requires that the petition itself disclose the facts relied upon in seeking relief. ' *Boyd v. State*, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion 'which, if true, entitle [s] the petitioner to relief.' *Lancaster v. State*, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993). It

is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in    Rule   32.9, Ala. R. Crim. P., to present evidence proving those alleged facts."

___ So. 2d at ___. The burden of pleading under Rule 32.3 and Rule 32.6 (b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements in Rule 32.3 and Rule 32.6(b). If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). *See Bracknell v. State*, 883 So. 2d 724 (Ala. Crim. App. 2003). Moreover, to sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner must not only "identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," *Strickland v. Washinaton*, 466 U.S. 668, 690 (1984), but must also plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. " *Id*. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.

In this case, the State requested summary dismissal of Freeman's claims of ineffective assistance of trial and appellate counsel on the ground that his allegations were not sufficiently pleaded, but the circuit court denied the request. The court conducted an evidentiary hearing and, in its order denying Freeman's petition, the court found that Freeman failed to satisfy his burden of proof as to each of his allegations. However, after thoroughly reviewing Freeman's petition, we conclude that Freeman was not entitled to an evidentiary hearing on his claims of ineffective assistance of trial and appellate counsel because, as explained below, none of his allegations were pleaded with sufficient specificity to satisfy the

requirements in Rule 32.3 and Rule 32.6(b).' Although this was
not the reason the circuit court gave for denying Freeman's
allegations of ineffective assistance of counsel, as noted above,
this Court will affirm the judgment of the circuit court if it is
correct for any reason.

(Tab R-72 at 13-15)

The Alabama Court of Criminal Appeals's finding that a petitioner

failed to comply Rule 32.6(b) is a sufficient state law grounds for precluding

federal habeas corpus review of a claim.  The Eleventh Circuit, in *Jenkins v.

Bullard*, 210 Fed.Appx. 895 (11th Cir. 2006), stated as follows:

> Federal courts do not review a procedurally defaulted
> state collateral claim in a § 2254 petition if the petitioner failed
> to substantially comply with a state procedural rule, *Lee v.
> Kemna*, 534 U.S. 362, 375-76, 382, 122 S.Ct. 877, 885, 889,
> 151 L.Ed.2d 820 (2002), the last state court to review the claim
> clearly and expressly stated that its judgment rested on the
> petitioner's failure to substantially comply with the state
> procedural rule, and the rule was firmly established and
> regularly followed when applied by the state court. *Judd*, 250
> F.3d at 1313; *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir.1996).
> Under this criteria, the district court was correct to dismiss
> Jenkins' claim as procedurally defaulted.

> First, Jenkins' Rule 32 petition, on its face, did not
> comply with the specificity requirements of Rules 32.3 and
> 32.6(b). For an ineffective-assistance-of-appellate-counsel
> claim, Jenkins was required to allege specific facts that his
> appellate counsel's performance was deficient-that counsel's
> decisions were so unreasonable that they could not be
> considered as part of the appellate strategy-and that the
> deficiency made a difference to the outcome of the proceeding.
> *See Strickland v. Washington*, 466 U.S. 668, 687, 689, 694, 104
> S.Ct. 2052, 2064-65, 2068, 80 L.Ed.2d 674 (1984).

. . .

To the extent, however, that Jenkins' Rule 32 petition did in fact allege that his counsel on direct appeal was ineffective, his claims amount to no more than a "bare allegation that a constitutional right has been violated and mere conclusions of law." Ala. R.Crim. P. 32.6(b). That is, Jenkins has done no more than claim that his trial counsel committed error X, and because of error X, counsel was ineffective. These are exactly the kinds of nonspecific allegations that the Alabama procedural rules prohibit. Jenkins' petition **lacks a "clear and specific statement" of the essential facts**, as it does not disclose, among other deficiencies, what other grounds his trial counsel should have included in the motion for judgment of acquittal; what jury charges his trial counsel should have objected to as misstatements of the law; what jury charges his trial counsel should not have asked for; and what prejudice he suffered by these alleged errors given that he was acquitted of the murder charge.

As to the second part of the procedural default rule, the Court of Criminal Appeals clearly and expressly stated that its judgment affirming the dismissal of Jenkins' Rule 32 petition rested on his failure to comply with Rules 32.3 and 32.6(b). Quoting for the lower court's order dismissing the petition, the Court of Criminal Appeals wrote that Jenkins' "claims fail to meet the requirements of specificity in pleadings as required by Rule 32.3 and further stressed by Rule 32.6(b)." "Because ... Jenkins's claims were ... procedurally barred," the Court of Criminal Appeals concluded, "the [lower] court did not err in summarily denying the petition pursuant to Rule 32.7(d)."

As to the third part of the procedural default rule, **Rules 32.3 and 32.6(b) have been firmly established and regularly followed by the Alabama courts.** The Court of Criminal Appeals has consistently affirmed, as it did with Jenkins, lower court decisions that have summarily dismissed Rule 32 petitions that do not include specific facts which would entitle the petitioner to collateral relief. *See, e.g., Shaw v. State*, 949 So.2d 184, ---- (Ala. Crim. App. 2006); *Tubbs v. State*, 931

So.2d 66, 68 (Ala. Crim. App. 2005); *Boyd v. State,* 913 So.2d 1113, 1126-32 (Ala. Crim. App. 2003); *Chambers v. State*, 884 So.2d 15, 18-19 (Ala. Crim. App. 2003).

Finally, Jenkins **has not demonstrated that there was cause for, and that he was prejudiced by, his procedural default, or that the procedural bar, if applied here, would work a fundamental miscarriage of justice.** Jenkins did not include in his § 2254 petition any objective factors that would indicate that he was **impeded from complying with Rules 32.3 and 32.6(b)**. *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir.2003) ("[t]o establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court"). The fact that he is proceeding pro se with his § 2254 petition is insufficient to establish cause.

Nor did Jenkins suggest in his § 2254 petition that he is actually innocent of the crime for which he has been convicted or that, but for the procedural bar, the outcome of his habeas claims would be different, which are threshold requirements of the fundamental-miscarriage-of-justice and cause-and-prejudice exceptions to the procedural default rule, respectively. *See Henderson*, 353 F.3d at 892 ("[a] fundamental miscarriage of justice occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"; "[t]o establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different"). Accordingly, with all the exceptions inapplicable here, the district court did not err in dismissing Jenkins' ineffective-assistance-of-appellate-counsel claims as procedurally defaulted.

*Id*. at 899-901 (emphasis added).

Freeman offers several arguments designed to prevent application of a procedural bar to all of his ineffective assistance of trial counsel claims.

First, he attempts to suggest that this ruling was improper because the State

did not assert this argument in the Rule 32 court.  This is incorrect.  In its answer to Freeman's initial Rule 32 petition, the State asserted that all of Freeman's ineffective assistance of trial counsel claims "should be dismissed because the Petitioner failed to comply with Rule 32.6(b) of the Alabama Rules of Criminal procedure, which requires that the petition "contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the basis of those factual grounds." (Tab R-49 at 44 (quoting *Ex parte MacEwan*, 2001 WL 823699, at *2 (Ala. 2001), *opinion withdrawn on rehearing*, 860 So.2d 896 (Ala. 2002)).  Freeman proceeded to amend his petition **four times**, and each time the State reasserted that these claims were insufficiently plead under Rule 32.6(b). (Tab R-51 at 98, Tab R-53 at 180, Tab R-58 at 358)  Numerous decisions of the Alabama courts—including *MacEwan* itself and the cases cited therein— apprised Freeman of the specific requirements of Rule 32.6(b).  Despite this, Freeman never added facts to his claims sufficient to meet his burden.

Strangely, Freeman claims that the State abandoned these arguments because it did not assert them orally at a January 23, 2002, hearing. (Doc 64 at 60-61)  By this time, however, the State had already moved for the dismissal of claims pursuant to Rule 32.6(b), and the circuit court had already denied the motion. (Volume 48 at 39)  Similarly, Freeman infers

that the State retracted its Rule 32.6(b) arguments because the State's proposed order—drafted after a full evidentiary hearing—did not hold that the claims were barred by Rule 32.6(b).  (Doc 64 at 62-63)  The State is not required to harass the court by repeating motions that it has already raised and which have already been ruled upon.  Nor is the State required to propose holdings for the court's adoption that the court has already contradicted.  The State, having offered the Rule 32.6(b) arguments to the court and received a ruling, provided ample basis for Alabama Court of Criminal Appeals to affirm on that basis, as the appellate court may affirm for any basis that was presented below and supported by the record.

Freeman also asserts that he was denied an opportunity to cure defects in his petition by the fact that he received a favorable ruling from the circuit court.  Yet before the Rule 32 court, Freeman chose not to respond to the State's motion seeking dismissal of his claims under Rule 32.6(b).  And he forwent four amendment opportunities to his bring his petition in to conformity with the pleading requirements.  That he received a favorable— but erroneous—ruling from the circuit court provides no basis in law for ignoring his pleading failures, much less supporting a finding that he has shown "cause" sufficient to overcome the procedural bar.  Even had the Rule 32 court dismissed all of Freeman's claims on Rule 32.6(b) grounds,

Freeman has not demonstrated that the Rule 32 court would have been obligated to allow him to amend his petition **a fifth time** in order to attempt to cure the defects.

Freeman also asserts that the Alabama Court of Criminal Appeals's application of Rule 32.6(b) was not sufficiently "independent of federal law" because the pleading requirements necessarily entail whether or not a federal claim has been stated. (Doc 62 at 70-76) However, in nearly identical circumstances, the Eleventh Circuit has already concluded that a Rule 32.6(b) dismissal applied to ineffective assistance of counsel claims was sufficiently independent to require preclusion. *Jenkins*, 210 Fed.Appx. at 899-901. The Jenkins court similarly concluded that, contrary to Freeman's argument, Rule 32.6(b) is "firmly established and regularly followed." *Id*.

Though Freeman faults the Alabama Court of Criminal Appeals for appearing to require excessively specific pleadings, he cannot conceal that his pleadings, which repeatedly fail to state anything more than generic allegations, could not meet even the laxest of factual pleading standards, and in no event required the Alabama Court of Criminal Appeals to parse minutia of *Strickland*'s requirements to determine that the claims were inadequate. The Alabama Court of Criminal Appeals, in its opinion, provided a detailed explanation of the deficiencies in Freeman's pleadings.

(Tab R-72 at 15-25)  For these reasons, this court is precluded from considering the claims that were dismissed by the Alabama Court of Criminal Appeals under Rule 32.6(b).

> 2.    *Freeman's Rule 32 Petition Did Not Satisfy The Full And Fair Presentation Requirement.*

Freeman's habeas petition repeatedly attempts to expand his claims beyond the cursory allegations of ineffective assistance he provided in state court.  In an effort to distract this Court from his repeatedly attempts to expand his claims far beyond the allegations presented in state collateral proceedings, Freeman confounds the State's arguments regarding his failure to fairly present the claims below with its arguments concerning his  failure to comply with Rule 32.6(b).  (Doc 64 at 65)  Though the two arguments share some common elements, they are distinct and equally sufficient bases for restricting review of Freeman's claim in this court.  Freeman, suggests, wrongly, that it is the State that is confusing the fair presentation and state procedural default doctrines.  The State is not confused, and neither should this Court be.

The State's principal argument for denying review of Freeman's ineffective assistance of counsel claims, stated *supra*, is that they were largely dismissed because of his failure to comply with an independent and adequate state procedural rule.  Furthermore, even were Freeman to

overcome that hurdle, his claims should be severely restricted because his pleadings before this court include numerous allegations not plead below, thus denying the state courts a full and fair opportunity to decide his federal constitutional claims.

A petitioner must have afforded the state courts a full and fair opportunity to decide any federal constitutional claims presented in his federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-843 (1999). Moreover, if the petitioner presents in his federal habeas petition a different legal theory or new factual claim with respect to an issue raised in state court, the petitioner will not have satisfied the exhaustion requirement. *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005) ("in order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.'") (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Johnson v. Nagle*, 58 F. Supp. 2d 1303, 1332 (N.D. Ala. 1999) (citing *Hart v. Estelle*, 634 F.2d 987 (5th Cir. 1981)).

As set forth in detail in the State's answer, a comparison of Freeman's Fourth Amended Rule 32 Petition to his federal habeas corpus petition reveals numerous instances where the habeas petition adds significant new factual allegations to the analogous claim. Freeman does not—and cannot—

adequately explain why, **despite five opportunities**, he was unable to plead in state court allegations of fact which now appear in habeas corpus petition. As such, new legal theories and new factual claims put forth in the habeas petition should be deemed unexhausted, and this court should preclude review of the merits of those allegations.

*Contrary to Freeman's assertions, the State's arguments that he failed to comply with Rule 32.6(b) and also failed to afford the state courts a full and fair opportunity to consider his claims are not inextricably linked.* Even had Freeman offered identical pleadings to those offered in State court, review would still be precluded because the state court pleadings were properly dismissed under Rule 32.6(b). Conversely, even had the pleadings in State court complied with Rule 32.6(b), review of his claims would still be severely curtailed because a significant portion of the allegations in the habeas corpus petition were never plead in state court and remain unexhausted.

Freeman contends—again erroneously—that

[f]or an assertion that a claim has "not been exhausted" to be accurate, it must also be true that a state court remedy remains available for the petitioner to pursue. In this case, it is uncontested that no state court corrective procedures remain available to petitioner with respect to any of the claims alleged in the Petition submitted to this Court. . . . As a result, all of those claims are, by definition, exhausted."

(Doc 64 at 67)  If a claim has "not been exhausted," then a state remedy *must have been available* at some time.  But the Supreme Court has made perfectly clear that an unexhausted claim (or a claim that has not been "properly" exhausted) may *no longer be* available if the petitioner has " 'let[] the time run' on state remedies." *O'Sullivan*, 526 U.S. at 848.  Such has happened here as to the new allegations; Freeman could have added then to his original Rule 32 petition or any of his five amendments.  His failure to do so "in a timely fashion has resulted in a procedural default of those claims." *Id*.

For example, on page 24 of Freeman's habeas corpus petition, he specifically asserts that trial counsel were ineffective for failing to adequately question juror Walt Farmer with respect to any bias he had against the insanity defense.   However, in his Fourth Amended Rule 32 petition, Freeman's entire voir dire argument was only one sentence, in which he alleged "trial counsel failed to conduct meaningful, constitutionally permissible voir dire of the prospective jurors at petitioner's trial, failed to pose questions necessary to discover bias and predisposition on the part of prospective jurors, and failed to articulate meritorious challenges for cause based on information revealed by prospective jurors during voir dire."  (Tab R-57 at 323)  <u>The Rule 32 petition contains no</u>

<u>mention of Walt Farmer, and no allegation that trial counsel should have conducted questioning of *any* veniremember concerning the insanity defense.</u>  As such, this Court could not reasonably conclude that the pleadings in the Fourth Amended Rule 32 petition afforded the state courts a full and fair opportunity to decide whether any constitutional error occurred in trial counsel's questioning of Walt Farmer.

Because this claim has never been properly presented to a state court, it would be barred on several grounds in state court.  First, a Rule 32 petition at this point in time would be barred by the statute of limitation.  *See* Ala. R. Crim. P. 32.2(c).  Second, a Rule 32 petition raising this claim at this point in time would be barred by the ban on successive petitions.  *See* Ala. R. Crim. P. 32.2(b).  Thus, because any state remedy with respect to this claim is procedurally barred by the state procedural rules noted above, this claim is procedurally defaulted from this Court's review.  *See Collier v. Jones*, 910 F.2d 770, 772 (11th Cir. 1990) ("When a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.").  The State's answer is replete with similar examples of unexhausted allegations, and Freeman has failed to adequately explain who any of them should be considered on the merits by this Court.

3.    *Freeman Has Not Demonstrated that He Is Entitled To The Consideration Of Additional Facts, Much Less Further Evidentiary Hearings.*

Freeman asserts—without any support in federal law—that he is entitled to a new evidentiary hearing and the opportunity to plead new facts in his habeas petition because he was denied funds for expert assistance, and because the new evidence does not substantially alter the claims as the were presented in state court.  Both assertions are wrong.

Freeman relies on *Vasquez v. Hillery*, 474 U.S. 254, 258-59 (1986), for the proposition that he may present new claims backed by new evidence. In *Vasquez*, the district court requested that the prisoner provide a computer analysis of whether or not chance or accident could have accounted for the exclusion of blacks from the grand jury that indicted him.  The Supreme Court allowed consideration of the evidence because it did not substantially alter the claim as presented in state court.  <u>The *Vasquez* decision does not endorse the position that a habeas petitioner may present new allegations and evidence that he failed to offer in State court.</u>  Indeed, the Court specifically noted that

> Respondent had initially submitted only the evidence that had been considered in state court, and subsequently complied with the court's request by furnishing materials no broader than necessary to meet the needs of the court. Accordingly, the circumstances present **no occasion for the Court to consider a case in which the prisoner has attempted to expedite federal**

> **review by deliberately withholding essential facts from the
> state courts**. We hold merely that the supplemental evidence
> presented by respondent did not fundamentally alter the legal
> claim already considered by the state courts, and, therefore, did
> not require that respondent be remitted to state court for
> consideration of that evidence.

*Vasquez*, 474 U.S. at 260 (emphasis added).  The circumstances here are

completely different, where Freeman failed to offer evidence of **or even**

**plead** facts now key to whole new subclaims of ineffective assistance.

    *Vasquez* has repeatedly been distinguished to clarify that it is not does

not provide an avenue for expanding or adding claims during federal habeas

corpus review.  In *Brandon v. Stone*, 2007 WL 786330 (7th Cir. 2007) (slip

op.), the Sixth Circuit rebuked exactly the interpretation of *Vasquez* offered

by Freeman, stating:

> Stone is correct that *Vasquez* provides that a habeas petitioner
> may supplement the evidentiary record before the district court
> so long as the supplementary evidence "d[oes] not
> fundamentally alter the legal claim already considered by the
> state courts." 474 U.S. at 260.  This holding, however, is not
> relevant to the matter at issue in this case: whether Stone raised
> the claim upon which he was granted habeas relief before the
> Tennessee courts. While Stone argues that his ineffective
> assistance claim has remained essentially unchanged
> throughout his state and federal postconviction proceedings, our
> own review of the record demonstrates that Stone is incorrect.
> Prior to the filing of his amended habeas petition with the
> district court, **the particular theory upon which Stone sought
> and was ultimately granted relief can be found nowhere in
> the record. Whatever Vasquez may say about supplemental
> evidence, the controlling law of this circuit is that
> exhaustion requires a petitioner to present his or her legal**

> **theory to the state courts before seeking federal relief.** As Stone failed to comply with this requirement, his request for relief must be denied.

*Id.* at *2. *See also Landano v. Rafferty*, 897 F.2d 661, 673 (3d Cir. 1990) (distinguishing *Vasquez* because the petitioner "has not carried his burden of showing that he has fairly presented the substance of his present *Brady* claims to the state courts, therefore, the principles involving what quantum of additional evidence can support an exhausted claim without running afoul of § 2254(b) are irrelevant to our analysis.").

Here, the evidence that Freeman seeks to submit is not merely cumulative or supportive of a claim already fully presented in state court. Rather, Freeman attempts to provide completely new evidence in support of facts that were barely plead in the Rule 32 petition—much less proven at the Rule 32 evidentiary hearing. *See Anderson v. Johnson*, 338 F.3d 382, 387 (5th Cir. 2003) (stating that "evidence that places the claims in a significantly different legal posture must first be presented to the state courts."); *Graham v. Johnson*, 94 F.3d 958, 969 (5th Cir. 1996) (concluding that Graham's new offering of several affidavits of alibis and eyewitnesses, a police report, two psychologist reports, and a firearms report to the federal court but not the state courts rendered his IAC and actual innocence claims unexhausted).

Freeman also argues, without legal grounding, that he is entitled to a new evidentiary hearing because this case falls outside of §2254(e)(2).  (Doc 64 at 99)  His argument is based on his allegation that "it is not petitioner's fault that the additional facts he presents to this Court were not developed or presented to the state courts."  (Id.)  This is the case, he asserts, because he was denied funds for expert assistance.

Similarly, Freeman has added claims throughout the habeas corpus petition asserting that he was improperly denied funds for various experts during Rule 32 proceedings.  To the extent this attempts to raise an independent claim for relief, it is without merit.  There is no federal right to expert assistance in state post-conviction proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("[t]here is no constitutional right to an attorney in state post-conviction proceedings... [c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."); *Roberts v. Dretke*, 356 F.3d 632, 640 (5th Cir. 2004) (petitioner's argument that the state court's denial of funding needed to develop and present post-conviction claims preserved them for federal habeas review failed because there is no right to funding of state habeas counsel, therefore the claims were not exhausted and were properly dismissed).  This claim raises only an issue of state law—whether the state

courts correctly applied precedent from the Supreme Court of Alabama.
Federal courts may grant relief to a state prisoner "only on the ground that
he is in custody in violation of the Constitution or laws or treaties of the
United States." 28 U.S.C. § 2254(a). See also 28 U.S.C. § 2241(c)(3).
Because this claim does not present this Court with an issue of constitutional
or federal law, this Court is without jurisdiction to review that claim. *See,
e.g., Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not
issue the writ on the basis of a perceived  error of state law."); *Williams v.
Turpin*, 87 F.3d 1204, 1206 n.1 (11th Cir. 1996) ("a federal court cannot
review perceived errors of state law"); *Sullivan v. Wainwright*, 695 F.2d
1306, 1313 (11th Cir. 1983) ("We find that Sullivan's claim with regard to
the polygraph does not raise an issue of constitutional or federal law, and we
do not have jurisdiction to consider it.").

The State is also not required to provide funds for expert assistance
during post-conviction litigation under Alabama law. *Williams v. State*, 783
So.2d 108 (Ala. Crim App. 2000) (citing *Ake v. Oklahoma*, 470 U.S. 68
(1985)). Furthermore, as the State argued in opposing the motions for funds,
Freeman also failed to demonstrate special circumstances requiring the
expenditure of funds, because his cursory allegations of ineffective
assistance failed to demonstrate that the experts were likely to generate

admissible evidence and also failed to show that the evidence generated was likely to prove that counsel's actions were unreasonable under the circumstances or that he suffered prejudice. Because of these failures, he did not establish that funding for experts were essential to the litigation of his case.

Freeman's argument is also undermined by the facts of this case. Keir M. Weyble has been lead counsel for Freeman throughout both his Rule 32 and federal habeas corpus proceedings. Freeman has not provided any explanation why the lack of funds for experts prevented him from properly pleading his allegations in state court, **given that he has managed to add new allegations to the habeas corpus petition even though he still has not received any funds for expert assistance.** Mr Weyble's failure to present facts in state court that he is prepared to now present in federal court establishes that Freeman's pursuit of these claims lacked diligence sufficient to prevent further expansion of the record. *See Williams v. Taylor*, 529 U.S. 420, 432 (2000).

In any event, the Alabama Court of Criminal Appeals held that Freeman's ineffective assistance of counsel claims were insufficiently plead. As such, it would be inappropriate for this court to allow an evidentiary hearing for the presentation of evidence that either relates to claims that

were insufficiently plead in state court or were not properly exhausted at all.

Both Freeman's attempts to present unexhausted claims—and his attempts to

introduce new evidence in support of those claims—should be rejected by

this Court.

**C.     The individual claims are all procedurally defaulted or meritless.**

       *1.     The Sub-Claim That Trial Counsel Failed To Challenge The Prosecution's Forensic Odontology Evidence.*

This claim is procedurally defaulted because the Alabama Court of

Criminal Appeals found that it did not meet the pleading requirements of

Rule 32.6(b).  Addressing this claim, the Court of Criminal Appeals held:

> Freeman alleged that his trial and appellate counsel were
> ineffective for not challenging the admissibility of testimony
> from Michael O'Brien, the State's expert in forensic
> odontology, and that his trial counsel were ineffective for not
> presenting evidence of an alternative source for the bite marks
> found on his arm after the murders. (Issues III.B., III.C., and
> V1.A. in Freeman's brief.)

>     In Ground 11-D., Freeman alleged:

>     "Trial counsel failed to object to the testimony of the
> prosecution's purported forensic odontology expert
> concerning the alleged bite marks on petitioner's arm. As
> a result, this testimony was admitted in the absence of
> any demonstration: (i) that forensic odontology is
> sufficiently reliable to satisfy the criteria for admissibility
> as scientific evidence against the accused in a criminal
> proceeding; (ii) that the prosecution's witness possessed
> the expertise necessary to determine the age of the
> alleged marks on petitioner's arm; (iii) that the categories

of bite marks described by the prosecution's witness are grounded in empirical data or recognized within the scientific community; (iv) that the alleged marks in this case bear sufficient indicia to be susceptible of accurate categorization within the set of categories described by the prosecution's expert; (v) that the prosecution's witness in this case possessed the expertise necessary to properly conduct the comparisons upon which his testimony was purportedly based; or (vi) that the comparisons allegedly performed by the prosecution's expert yielded results possessing a level of reliability sufficient to warrant their consideration by a trial court in a capital case. The evidence presented through the testimony of the forensic odontologist was prejudicial to petitioner as it provided, among other things, evidence from which the jury could find the heinous, atrocious and cruel aggravating circumstance, and it also provided a basis for the jury's finding that petitioner had remained unlawfully in the victims' house after the revocation of consent and was, therefore, guilty of burglary. But for counsel's deficient performance, there exists a reasonable probability that the result of petitioner's trial would have been different."

(C. 296-97.) In Ground VIII.C., Freeman alleged:

"The record on appeal included the testimony of Michael O'Brien, who was called by the prosecution to provide his 'expert' opinion that bite marks allegedly found on petitioner's arm had been made within a day or two of O'Brien's examination of petitioner, to claim that the marks 'were consistent with marks made in either an offensive or defensive type of circumstance, ' R. 444, ln 9-11, and to opine that the marks had been made by Sylvia Gordon. Despite the absence from the record of foundational testimony necessary to establish the admissibility or reliability of this testimony, see Ground II.D., *supra*, appellate counsel raised no challenge to the trial court's admission of, and reliance on O'Brien's testimony. Appellate counsel's failure in this regard

constituted deficient performance, and, had counsel
raised the available challenges on direct appeal, there is a
reasonable probability that petitioner's convictions and/or
sentence would have been reversed."

(C. 306-07.)

Although Freeman specifically alleged the act or
omission on the part of trial and appellate counsel that he
believes was unreasonable, he failed to plead specific facts
tending to indicate that he was prejudiced by counsel's
performance in this regard. Freeman made only a conclusory
allegation that the testimony of O'Brien was prejudicial because
it "provided a basis" for the jury to find that Freeman was
guilty of burglary and to find the presence of the heinous,
atrocious, or cruel aggravating circumstance. However,
Freeman alleged virtually no facts in his petition regarding the
circumstances of the crimes, he did not allege anywhere in his
petition what evidence was presented at trial by the State and
the defense, and he did not state anywhere in his petition what
aggravating and mitigating circumstances were presented to the
jury at the penalty phase of the trial or what circumstances were
found by the trial court to exist. Even assuming the bare factual
allegations in the petition to be true, they do not tend to indicate
that the testimony of the forensic odontologist was improperly
admitted or that it prejudiced Freeman, either at the guilt phase
or the penalty phase of the trial, in any way. Thus, Freeman
failed to satisfy his burden of pleading with respect to these
allegations of ineffective assistance of trial and appellate
counsel.

In Ground 1I.E. of his fourth amended petition, Freeman
further alleged:

"Despite having been informed of an alternative source
of the bite marks which were allegedly visible on
petitioner's arm following his arrest, trial counsel failed
to investigate and present reliable evidence in light of this
information. But for counsel's deficient performance,

> there exists a reasonable probability that the result of
> petitioner's trial would have been different."

(C. 297-98.) Freeman did not even identify who or what the
alternative source of the bite marks was; therefore, he clearly
failed to satisfy his burden of pleading with respect to this
allegation of ineffective assistance of trial counsel.

Moreover, we note that even if we were to consider these
allegations of ineffective assistance of trial and appellate
counsel to be sufficiently pleaded (which we do not), a review
of the trial transcript reveals that they are meritless.

First, to the extent that Freeman is arguing that his trial
and appellate counsel should have challenged the admissibility
of O'Brien's testimony on the ground that the State failed to lay
the proper predicate for the admission of scientific evidence,
this Court has held that bite mark identification testimony is not
scientific evidence. *See Handlev v. State*, '51.5 So. 2d 121 (Ala.
Crim. App. 1987). Thus, the predicate for the admission of
scientific evidence was not necessary to the admissibility of
O'Brien's testimony and any challenge on this ground would
have been baseless. "[C]ounsel could not be ineffective for
failing to raise a baseless objection." *Bearden v. State*, 825 So.
2d 868, 872 (Ala. Crim. App. 2001).

Second, to the extent that Freeman is arguing that his trial
and appellate counsel should have challenged O'Brien's
testimony on the ground that O'Brien was not qualified as an
expert in forensic odontology, our review of the record reveals
that he was properly qualified as an expert. O'Brien testified, in
part, that he received his dental degree in 1983; that he
completed a year fellowship in oral and maxillofacial surgery;
that he received training in forensic dentistry/odontology
[footnote omitted] and pathology, including bite mark
identification, while in the Navy; that he had been in private
practice since 1986; that he was board certified from the
National Dental Board of Examiners and the Alabama Board of
Dental Examiners; that he was a member of the American
Academy of Forensic Sciences, the American Society of

44

Forensic Odontology, and the Alabama Association of Forensic Sciences; that he had written several articles about bite mark identification; and that he was a consultant with the Alabama Department of Forensic Sciences in the area of forensic odontology. The trial court certified O'Brien as an expert in bite mark identification. As this Court noted in *Handley*, "[t]he general rule is that the competence of an expert witness to testify is an inquiry substantially within the discretion of the trial judge, and the appellate court will not disturb the trial judge's determination of expert qualifications unless there is a clear abuse of this discretion." 515 So. 2d at 131. O'Brien was qualified to testify as an expert in bite mark identification. Therefore, any challenge to O'Brien's testimony on this ground would have been baseless.

Finally, with respect to Freeman's arguments that his trial and appellate counsel should have challenged that portion of O'Brien's testimony wherein he stated that the bite marks on Freeman's arms appeared to be "no more than a day or two old" (Record on Direct Appeal, R. 443) [FN10 O'Brien testified that he examined the marks on March 12, 1988, the day after the murders; thus, his testimony regarding the age of the marks placed them within the time frame of the murder] and that they appeared to have been made in an offensive or defensive type manner, and that trial counsel should have presented evidence of an alternative source for the bite marks, we find that Freeman suffered no prejudice. Even if trial and appellate counsel had successfully challenged O'Brien's testimony regarding the age of the bite marks and the manner in which the marks were inflicted and either the trial court excluded that testimony or this Court determined that "testimony to be inadmissible at trial counsel had presented evidence that the source of the bite marks was someone other than Sylvia Gordon, [FN11 We note that in his statement to police, Freeman said that he had received the bite marks from one of his relatives when that relative suffered an epileptic seizure. Thus, there was some evidence before the jury of an alternative source for the bite marks.] the outcome of Freeman's trial would not have been different. The evidence of the bite marks on Freeman's arm was only a small piece of the State's overwhelming case against Freeman and it was not a

crucial component of the State's proof of capital murder during a burglary or of the heinous, atrocious or cruel aggravating circumstance, as Freeman appears to contend. *See Freeman v. State*, 776 So. 2d 160, 193 and 197-98 (Ala. Crim. App. 1999) (wherein this Court set forth the abundant evidence in addition to the bite marks that supported the charges of capital murder during a burglary and the heinous, atrocious or cruel aggravating circumstance)." Additionally, as noted above, Freeman admitted that he murdered Mary and Sylvia Gordon; his defense at trial was insanity. Challenging the bite mark evidence, the only purpose of which would have been to suggest that Freeman did not commit the murders, would have conflicted with his defense. Therefore, neither trial or appellate counsel were ineffective in this regard.

Because these allegations of ineffective assistance of trial and appellate counsel were not sufficiently pleaded and are meritless based on our review of the trial transcript, they were properly denied by the circuit court.

(Tab R-72 at 16-21)  The determination that this claim was insufficiently plead was an independent and adequate state law ground precluding review.

Furthermore, the court's alternative holding that the claims lack merit is also uncontroverted by Freeman's brief.  Freeman has not established that the trial court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. §2254(d)(1)-(d)(2).  Federal habeas relief is therefore foreclosed.

2.     *The Sub-Claim That Trial Counsel Were Ineffective For Deposing Dr. Guy Renfro.*

This claim is procedurally defaulted because the Alabama Court of Criminal Appeals found that it did not meet the pleading requirements of Rule 32.6(b).  Addressing this claim, the Court of Criminal Appeals held:

> In Ground 1I.H. of his fourth amended petition, Freeman alleged:
>
>> "Trial counsel deposed Dr. Guy Renfro despite knowledge that his conclusions were harmful to petitioner's defense. As a result of trial counsel's decision to take Dr. Renfro's deposition, the prosecution was supplied with useful evidence against petitioner, which it subsequently introduced at petitioner's trial. But for counsel's deficient performance, there exists a reasonable probability that the result of petitioner's trial would have been different."
>
> (C. 298-99.) (Issue 1II.F. in Freeman's brief. ) Freeman failed to even identify in his petition who Dr. Guy Renfro was, and, as the circuit court correctly found in its order, failed to plead any facts regarding what conclusions Dr. Renfro had that were harmful to Freeman or what evidence Dr. Renfro developed that was used by the State. Clearly then, Freeman failed to satisfy his burden of pleading with respect to this allegation of ineffective assistance of trial counsel, and it was properly denied by the circuit court.

(Tab R-72 at 23-24)  The determination that this claim was insufficiently plead was an independent and adequate state law ground precluding review.

The Rule 32 court addressed the merits of this claim and made the following findings:

> Trial counsel indicated during the trial that, despite having a
> copy of Renfro's report, "[they] weren't exactly sure what he
> was going to say." (R. 993) Trial counsel attempted to
> withdraw their questions asked during Renfro's deposition and
> objected to the State's questions as being leading. (R. 944)
> The Court overruled trial counsel's objections and allowed
> Renfro's deposition to be played to the jury in its entirety. (R.
> 1000) The record clearly indicates that trial counsel did not,
> and indeed, could not know what Renfro's exact testimony
> would be until he was deposed. Moreover, other than
> contending in his fourth amended petition that "the prosecution
> was supplied with useful evidence against [him]", Freeman
> completely fails to support this claim. Freeman fails to cite in
> his petition or argue at his evidentiary hearing what specific
> testimony in Renfro's deposition caused him to be prejudiced.
> The Court finds that Freeman has failed to meet his burden of
> proving trial counsel's taking Renfro's deposition was the result
> of deficient performance or caused him to be prejudiced as
> required by Strickland. Rule 32.3, ARCrP. Therefore, this
> claim is hereby denied.

(Volume 50 at 464-65)

Additionally, Freeman has not properly exhausted this claim because

he has added allegations that were not presented in state court. Freeman

never raised the present arguments that "despite the fact that Renfro's report

indicated findings inconsistent with the defense theory that petitioner was

not guilty by mental disease or defect, defense counsel chose to depose

Renfro prior to trial" and that this deposition "demonstrates how aimless and

incoherent the defense case was" or that "[i]n addition to undermining the

insanity defense, counsel's error also negatively affected their credibility

before the jury." (Pet. at 32-33) In fact, as noted above, Freeman failed to

even identify in his Rule 32 petition who Dr. Guy Renfro was. A petitioner

must have afforded the state courts a full and fair opportunity to decide any

federal constitutional claims presented in his federal habeas petition.

*O'Sullivan*, 526 U.S. at 842-843. Moreover, if the petitioner presents in his

federal habeas petition a different legal theory or new factual claim with

respect to an issue raised in state court, the petitioner will not have satisfied

the exhaustion requirement. *McNair*, 416 F.3d at 1291; *Johnson*, 58 F.

Supp. 2d at 1332.

Freeman has not established that the trial court's decision "was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" or

that the court's decision "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in

the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2). Federal habeas

relief is therefore foreclosed.

        3.     *The Sub-Claims That Trial Counsel Failed To Investigate*
                *Evidence Of Freeman's Mental Health And*
                *Neurological Impairments.*

These claims are procedurally defaulted because the Alabama Court

of Criminal Appeals found that it did not meet the pleading requirements of

Rule 32.6(b).  Addressing this claim that counsel failed to investigate

evidence of neurological impairments, the Court of Criminal Appeals held:

> In Ground II.G. of his fourth amended petition, Freeman
> alleged:
>
>> "Trial counsel failed to investigate, develop and present
>> evidence that petitioner suffers from neurological
>> impairments. But for counsel's deficient performance,
>> there exists a reasonable probability that the result of
>> petitioner's trial would have been different."
>
> (C. 298.) (Issue III.E. in Freeman's brief.) Freeman failed to
> allege in his petition any facts tending to indicate that his
> counsel's performance was deficient or that he was prejudiced
> by counsel's performance. He did not allege what type of
> neurological impairments he suffered from; the severity of his
> alleged impairments; or how the alleged impairments would
> have been relevant to his trial. Likewise, Freeman made only a
> conclusory allegation that the result of his trial probably would
> have been different, without pleading any facts whatsoever that
> would tend to indicate that he was prejudiced. Because Freeman
> failed to satisfy his burden of pleading, denial of this allegation
> of ineffective assistance of trial counsel was proper.

(Tab R-72 at 23)

> Addressing the mental health and background claims, the court held:
>
> In Grounds 1I.J. and 1I.K. of his fourth amended petition,
> Freeman alleged:
>
>> "Trial counsel failed to investigate, develop and present
>> available evidence in mitigation of petitioner's
>> punishment. But for counsel's deficient performance,
>> there exists a reasonable probability that the result of
>> petitioner's trial would have been different.

> "Trial counsel failed to present available evidence
> regarding petitioner's background and his mental health
> history to the jury in a manner which would have allowed
> the jury to give this evidence mitigating effect during the
> sentencing phase. But for counsel's deficient
> performance, there exists a reasonable probability that
> the result of petitioner's trial would have been different."

> (C.299.) (Issue 1II.G. in Freeman's brief.) Freeman did not
> allege in his petition what "available evidence" there was about
> his background or mental health history that his counsel did not
> present or what "manner" he believes his counsel should have
> presented the unidentified evidence. Likewise, other than the
> conclusory allegation that but for counsel's conduct in this
> regard, there was a reasonable probability that the outcome of
> his trial would have been different, Freeman alleged no facts
> tending to indicate that he was prejudiced by counsel's
> preparation for and conducting of the penalty phase of his trial.
> His contentions in this regard are vague and conclusory and
> wholly insufficient to satisfy his burden of pleading. Therefore,
> denial of these allegations of ineffective assistance of trial
> counsel was proper.

(Tab R-72 at 24-25)  The determination that these claims were insufficiently

plead were independent and adequate state law grounds precluding review.

The Rule 32 court addressed the merits of these claims and made the

following findings:

> Ground II.(G) of Freeman's fourth amended petition, his entire
> argument to the Court is that his "[t]rial counsel failed to
> investigate, develop and present evidence that petitioner suffers
> from neurological impairments." (Freeman's fourth amended
> petition at p. 6) **Freeman presented absolutely no evidence
> at his evidentiary hearing concerning this claim.** The Court
> finds that Freeman has failed to meet his burden of proving trial
> counsel's failure to investigate and present evidence of
> Freeman's alleged neurological impairments was the result of

deficient performance or caused him to be prejudiced as required by Strickland. Rule 32.3, ARCrP. Therefore, this claim is hereby denied.

. . .

In Ground II.(K) of Freeman's fourth amended petition, his entire argument to the Court is that "[t]rial counsel failed to present available evidence regarding [his] background and his mental health history to the jury in a manner which would have allowed the jury to give this evidence mitigating effect during the sentencing phase." (Freeman's fourth amended petition at p. 7)

In *Payne v. State*, 791 So. 2d 383, 407 (Ala. Crim. App. 1999), the Alabama Court of Criminal Appeals held that "[m]erely because trial counsel did not present the evidence as Payne now believe he should have presented does not establish that trial counsel was ineffective."

**Freeman failed to offer any evidence at his evidentiary hearing proving that if trial counsel had presented the evidence of his background and mental health history in a different manner, the outcome of his trial would have been different.** The Court finds that Freeman has failed to meet his burden of proving that trial counsel's performance presenting mitigation evidence was the result of deficient or cause him to be prejudiced are required by *Strickland*. Rule 32.3, ARCrP. Therefore, this claim is hereby denied.

(Volume 50 at 463-64, 66-67 (emphasis added))

Additionally, Freeman has not properly exhausted this claim because he has added allegations that were not presented in state court. What were a pair of one-sentence claims in the Rule 32 petition have been expanded substantially in his habeas corpus petition. Freeman never raised the

present claim that records were available to trial counsel that should have caused counsel to investigate the possibility that petitioner suffers from neurological impairments.   (Pet. at 35)  The Rule 32 petition did not raise the new allegation that that by "[f]ocusing exclusively on an ill-conceived effort to establish that petitioner was not guilty by reason of mental disease or defect, counsel squandered the mitigating value of the information about petitioner's background."   (Pet. at 40 (citations omitted))  Freeman never raised the present claim that "with the assistance of a mitigation investigator, social worker and a neuropsychologist, trial counsel could have provided the jury with substantial evidence militating against a death sentence."   (Pet. at 41)  <u>In fact, Freeman never mentioned experts of any kind in his Rule 32 petition.</u>

A petitioner must have afforded the state courts a full and fair opportunity to decide any federal constitutional claims presented in his federal habeas petition.  *O'Sullivan*, 526 U.S. at  842-843.  Moreover, if the petitioner presents in his federal habeas petition a different legal theory or new factual claim with respect to an issue raised in state court, the petitioner will not have satisfied the exhaustion requirement.  *McNair*, 416 F.3d at 1291; *Johnson*, 58 F. Supp. 2d at 1332.

Freeman has not established that the trial court's decision "was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" or

that the court's decision "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in

the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2). Federal habeas

relief is therefore foreclosed.

    *4.    The Sub-Claim That Trial Counsel Failed To Introduce*
*              Evidence Of Freeman's Adaptability To Prison.*

This claim is procedurally defaulted because the Alabama Court of

Criminal Appeals found that it did not meet the pleading requirements of

Rule 32.6(b). Addressing this claim, the Court of Criminal Appeals held:

> In Ground II.L. of his fourth amended petition, Freeman
> alleged:
>
>> "Trial counsel failed to investigate and introduce readily-
>> available evidence of petitioner's good behavior in and
>> adaptability to prison. *See Skipper v. South Carolina*, 476
>> U.S. 1 (1986). But for counsel's deficient performance,
>> there exists a reasonable probability that the result of
>> petitioner's sentencing proceeding would have been
>> different."
>
> (C.300.) (Issue 1II.H. in Freeman's brief.) Again, Freeman
> failed to allege what evidence he believes his counsel should
> have presented in this regard. He made no factual allegations
> whatsoever regarding what his behavior was in prison or how
> he adapted to prison life. In addition, he made only a
> conclusory allegation of prejudice without pleading any specific

facts that would tend to indicate that evidence of his alleged
"good behavior in and adaptability to prison" would have
altered the balance of aggravating and mitigating
circumstances. Therefore, Freeman failed to satisfy his burden
of pleading with respect to this allegation of ineffective
assistance of trial counsel, and it was properly denied by the
circuit court.

(Tab R-72 at 25)  The determination that this claim was insufficiently plead

was an independent and adequate state law ground precluding review.

The Rule 32 court addressed the merits of this claim and made the

following findings:

In Ground II.(J) of Freeman's fourth amended petition, his
entire argument to the Court is that "[t]rial counsel failed to
investigate and introduce readily-available evidence of [his]
good behavior in and adaptability to prison." (Freeman's fourth
amended petition at p. 8) **Freeman presented no evidence at
his evidentiary hearing concerning this claim.**  The Court
finds that Freeman has failed to meet his burden of proving trial
counsel's alleged failure to investigate and present mitigating
evidence was the result of deficient performance or caused him
to be prejudiced as required by *Strickland*.  Rule 32.3, ARCrP.
Therefore, this claim is hereby denied.

(Volume 50 at 467-68 (emphasis added)

This claim has been expanded from its Rule 32 petition form, and

therefore Freeman has not properly exhausted this claim.  Freeman never

raised the present claim that "trial counsel had in their possession

petitioner's institutional records, but failed to submit them for review by a

competent expert on institutional adaptability who could have utilized them

in reaching a determination as to petitioner's adaptability to confinement, and testified on that issue before the jury."  (Pet. at 44)  A petitioner must have afforded the state courts a full and fair opportunity to decide any federal constitutional claims presented in his federal habeas petition. *O'Sullivan*, 526 U.S. at  842-843.  Moreover, if the petitioner presents in his federal habeas petition a different legal theory or new factual claim with respect to an issue raised in state court, the petitioner will not have satisfied the exhaustion requirement. *McNair*, 416 F.3d at 1291; *Johnson*, 58 F. Supp. 2d at 1332.

Freeman has not established that the trial court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. §2254(d)(1)-(d)(2).  Federal habeas relief is therefore foreclosed.

IV.    **The Claim That Freeman Was Denied His Right To A Fair Sentencing Due To The Admission Of The Odontological Evidence.**

Freeman contends in section V of his habeas corpus petition, on pages 46-48, that he was denied a fair sentencing proceeding as a result of the introduction of purportedly unreliable bite-mark evidence.

As set forth in the State's answer, Freeman's claim is procedurally defaulted because it was not raised at trial or on direct appeal, and therefore the claim was procedurally defaulted under state law.  (Answer, pp. 59-61)  Freeman does not attempt to show prejudice or a fundamental miscarriage of justice to overcome the procedural defaults of this claim.  Instead, Freeman argues that he was not obligated to raise the claim on direct appeal because he attempted to raise it during state collateral proceedings.

Freeman contends that this claim "was best suited for review in collateral proceedings" because he needed to supplement the record with expert testimony in order to demonstrate that the evidence admitted at trial was not reliable.  (Doc 64 at 177)  He asserts support from the purportedly "analogous" decisions in *Massaro v. United States*, 538 U.S. 500 (2003), *Robitaille v. State*, 2005 WL 3118795, at *21 (Ala. Crim. App. 2005), and *State v. Freeman*, 605 So. 2d 1258, 1259 (Ala. Crim. App. 1992).  Both *Massoro* and *Robitaille* discussed ineffective assistance of counsel claims.

But this claim does not contain any allegation of ineffective assistance of counsel in failing to object to this evidence. The claim concerns the evidence itself, not the trial counsel's performance.

*State v. Freeman* concerned a juror misconduct claim where the jury foreman had concealed the fact that he was a former police officer during questioning. 605 So.2d at 1259. However, this type of claim is explicitly allowed in collateral review where the juror misconduct claim is based on newly discovered evidence. There exists no similar provision for reconsidering evidentiary determinations, and in any event Freeman allegations regarding the odontological testimony *makes no allegation that they are based on newly discovered evidence that could not have been discovered at trial*.

Freeman's reliance on *Johnson v. Mississippi*, 486 U.S. 578 (1988) is similarly misplaced. There, petitioner's death sentence was based, at least in part, on a felony conviction that was later vacated. *Id*. at 1987. Once again, Freeman points to a claim that, unlike the instant claim, could not possible have been raised at trial.

At bottom, this claim is nothing more than a challenge to the admission of evidence, which is precisely the sort of claim that must be raised at trial or on direct appeal. Freeman focuses on the fact that he

wanted to hire an expert during Rule 32 proceedings as a distraction from his failure to offer similar challenges to the evidence at trial.  There are claims which facilitate reconsideration of the evidence on collateral appeal: a petitioner may state claim by alleging that newly discovered evidence demonstrates actual innocence or that the state withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Freeman does not allege he is actually innocent, and does not allege a *Brady* violation.  And he has not demonstrated any grounds for ignoring his procedural default of this claim.

Because the claim was procedurally defaulted, the Rule 32 court correctly dismissed it before a hearing and without providing funds for expert testimony on the claim.  Petitioner has failed to establish that he is entitled to a new evidentiary hearing on this claim.  As such, the "merits" of the claim are impossible to discuss because there is no evidence in the record to weigh.  Furthermore, the petition only contains the most cursory of allegations that the odontological testimony was unreliable and that the expert failed to follow established guidelines.  (Doc 5 at 46-47)  In his brief, Freeman adds numerous factual contentions and criticisms of the trial evidence—without citation to any affidavits and without even support in similar allegations in the petition.  (Doc 64 at 178-79)  Even were this Court

to reach the merits of this claim, these new allegations should be ignored as being unsupported by the habeas corpus petition and do not relate back to allegations offered in state court. The conclusory allegations in the petition provide no basis for relief.  Federal habeas relief is therefore foreclosed.

## V.    The Claim That Freeman Received Ineffective Assistance Of Appellate Counsel.

Freeman contends in section VI of his habeas corpus petition, on pages 48-53, that he was denied effective assistance of counsel on appeal. Specifically, Freeman alleges that his appellate counsel were ineffective for failing to challenge the admission of the prior testimony of Francis Boozer.

A set forth in the State's answer, Freeman's claim is procedurally defaulted because it was not fairly presented to the state courts and has therefore not been exhausted.  (Answer, pp. 61-64)  The State noted Freeman's in Freeman's Fourth Amended Rule 32 petition, Freeman's entire argument was only two sentences, in which he alleged "[t]he record on appeal reveals that the State was permitted to introduce the prior testimony of an allegedly unavailable witness, Francis Boozer, over the objection of defense counsel.  Had appellate counsel raised and argued this error, there is a reasonable probability that the result of petitioner's direct appeal would have been different."  (Tab R-57 at 336)  Freeman never raised any of his current claims that the State was not diligent in its effort to

locate Ms. Boozer or that the prosecution's argument that an out-of-state witness is per se unavailable was wrong, that Boozer's testimony "probably injuriously affected [his] substantial rights, or that the state did not meet its burden of demonstrating due diligence with respect to locating Boozer.    A petitioner must have afforded the state courts a full and fair opportunity to decide any federal constitutional claims presented in his federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-843 (1999).   Moreover, if the petitioner presents in his federal habeas petition a different legal theory or new factual claim with respect to an issue raised in state court, the petitioner will not have satisfied the exhaustion requirement.  *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005) ("in order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.'") (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Johnson v. Nagle*, 58 F. Supp. 2d 1303, 1332 (N.D. Ala. 1999) (citing *Hart v. Estelle*, 634 F.2d 987 (5th Cir. 1981)).

In his brief, Freeman completely ignores his failure to raise this claim in state court.  Even were this court to consider this claim, in full, on the merits, Freeman has failed to demonstrate that he is entitled to relief. Though the Alabama Court of Criminal Appeals dismissed as inadequately

pleaded the cursory claim that Freeman asserts exhausted his new federal

allegations, the Rule 32 court denied the claim on the merits, stating that

> Freeman failed to proffer in his petition or at his evidentiary
> hearing what argument or legal authority appellate counsel
> could have presented on appeal that would have caused the
> appellate court to reverse his convictions or sentence.

(Tab R-72 at 31)  He continues that failure in his brief on the merits before

this Court.  He does not cite to any case—federal or state—that suggests

that the trial court's allowance of Boozer's testimony was in error.  Though

Freeman faults the court for weighing indirect evidence that Boozer was

unavailable, he points to no case demonstrating that this was impermissible

under Alabama law, or that the court abused its discretion in allowing the

testimony.  He also does not offer any evidence or even allegation that

Boozer was not, in fact, unavailable.

Though Freeman admits that no Alabama case establishes that the

trial court abused its discretion, he points to *United States v. Acosta*, 769

F.2d 721 (11th Cir. 1985), for support.  There, the court found no abuse of

discretion where the trial court decided to preclude prior testimony where

the state asserted that the witness had stated that she was unavailable due to

her child's illness.  *Id*. at 723.  The trial court did not hold that the hearsay

testimony was inadmissible, but rather held it was uncompelling.  Notably,

had appellate counsel appealed this issue, it would have been presented

under the opposite posture—the trial court having decided, in its discretion, to credit the testimony of an investigator that witness was severely ill and unable to travel. *Acosta* merely affirms the discretion of trial courts in these matters, where they are in the best position to judge the credibility and strength of the evidence. Freeman points to no case suggesting that the Alabama Court of Criminal Appeals would have been likely to reverse the conviction and find that the trial court abused that discretion on these facts. And before the Rule 32 court, as the court noted in its order, *Freeman provided no legal argument at all in support of this claim.*

Freeman has not attempted, and certainly has not established, that the State court's determination of this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the State court's determination of this issue "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2). Federal habeas relief is therefore foreclosed.

## VI.    The Claim That Prosecutorial Misconduct Denied Freeman His Right To A Fair Trial.

Freeman asserts in section VII of the habeas petition, pages 53-57,

that the prosecutor's presentation of victim impact evidence at both phases

of the trial violated his rights

Freeman raised this issue on direct appeal.  The Alabama Court of

Criminal Appeals stated the following concerning this claim:

> Freeman further contends that the prosecutor engaged in numerous acts of misconduct at both the guilt and the penalty phases of his trial. Initially we note that Freeman did not object to any of the alleged instances of misconduct. " 'This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.' " *Kuenzel v. State*, 577 So.2d 474, 489 (Ala. Cr. App. 1990), *aff'd*, 577 So.2d 531 (Ala.), *cert. denied*, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), *quoting Johnson v. Wainwright*, 778 F.2d 623, 629 n. 6 (11th Cir. 1985), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). Thus, we must consider whether any of the prosecutor's comments complained of on appeal constituted plain error. Rule 45A, Ala.R.App.P.
>
> This court has stated that "[i]n reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract." *Bankhead v. State*, 585 So.2d 97, 106 (Ala. Crim. App. 1989), *remanded on other grounds*, 585 So.2d 112 (Ala. 1991), *aff'd on return to remand*, 625 So.2d 1141 (Ala. Crim. App. 1992), *rev'd on other grounds*, 625 So.2d 1146 (Ala. 1993). *See also Henderson v. State*, 583 So.2d 276, 304 (Ala. Crim. App. 1990), *aff'd*, 583 So.2d 305 (Ala.

1991), *cert. denied*, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). "In judging a prosecutor's closing argument, the standard is whether the argument 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Bankhead*, 585 So.2d at 107, *quoting Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "A prosecutor's statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury." *Roberts v. State*, 735 So.2d 1244, 1253 (Ala. Cr. App. 1997), *aff'd*, 735 So.2d 1270 (Ala. 1999). Moreover, "statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict." *Bankhead*, 585 So.2d at 106. "Questions of the propriety of argument of counsel are largely within the trial court's discretion, *McCullough v. State*, 357 So.2d 397, 399 (Ala. Crim. App. 1978), and that court is given broad discretion in determining what is permissible argument." *Bankhead*, 585 So.2d at 105. We will not reverse the judgment of the trial court unless there has been an abuse of that discretion. Id.

We note that the trial court repeatedly instructed the jury in this case that the comments and argument of the lawyers were not evidence to be considered by the jury in reaching a verdict or in recommending a sentence. (R. 394, 1168, 1186, 1202 (guilt phase); 1289, 1290 (penalty phase)).

. . .

Freeman contends that the following comments by the prosecutor during closing argument at the guilt phase of his trial were improper:

"Sylvia Gordon, 17-year-old girl, senior in high school. She was in LAMP [Lanier Academic Motivational Program, a high school honor's program]. She had a future. She had a promise. She had her whole life to live. She had just begun to live, nowhere close to reaching her potential.

"Mary Gordon wanted to do the best she could do. She did everything she could to provide for her children. She was alone. She had to be mother; she had to be father; she had to be everything, and she did a good job. She had Debbie [her older daughter], who worked hard, manager of a TCBY [a yogurt shop], gone through college, graduated high school, went through C-Pac, made the honors program. Sylvia, as we said, in the honor's program at LAMP. She did what she could. She worked so hard, as the testimony has shown, she was tired all the time. All she wanted to do was rest, if she could get a chance. And on Friday when the weekends come, when she comes home, home-think about this folks-her home, the place where she is the most comfortable, where she can be herself, where she can relax, she can unwind. And what she walks into is the worst nightmare that any parent can see, her own child helpless, dying, bleeding at *185 the hands of this man. And why? Because he couldn't get what he wanted."

(R. 1155-57.) Freeman argues that the prosecutor's comments about the victims were prejudicial because, he says, they were designed to create sympathy for the victims. After reviewing the comments in the context of the prosecutor's entire closing argument, we find no error, plain or otherwise.

The record reveals that the prosecutor, through the testimony of Deborah Gordon Hosford, Mary Gordon's daughter and Sylvia Gordon's sister, established, without objection, all of the personal information about the victims contained in the prosecutor's argument that Freeman now claims on appeal was prejudicial. Thus, the prosecutor's comments about the victims were proper because they were based on evidence presented at trial. *See Frazier v. State*, 758 So.2d 577 (Ala. Crim. App. 1999); *Burgess v. State*, 723 So.2d 742 (Ala. Crim. App. 1997), *aff'd*, 723 So.2d 770 (Ala. 1998); *Smith v. State*, 698 So.2d 189 (Ala. Crim. App. 1996), *aff'd*, 698 So.2d 219 (Ala.), *cert. denied*, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997). Whatever is in evidence at trial is considered subject to legitimate comment by counsel. *Jenkins v. State*, 627 So.2d 1034, 1050 (Ala. Crim. App. 1992), *aff'd*, 627 So.2d 1054 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct.

1388, 128 L.Ed.2d 63 (1994). The prosecutor's remarks about the victims were legitimate comments based on the evidence admitted at trial, or were reasonable inferences to be drawn from that evidence, and did not constitute improper victim-impact argument, as Freeman argues on appeal.

Moreover, even if we were to assume that the prosecutor's comments were irrelevant and improper, we would find any resulting error harmless. In *Smith v. State*, opinion on return to remand, 756 So.2d 892, 904 (Ala. Crim. App. 1997), we stated, relevant to such a claim:

" 'Recently, this Court examined the issue of victim impact evidence in *Ex parte Rieber*, 663 So.2d 999 (Ala. 1995). In *Rieber*, we acknowledged that testimony regarding a murder victim's children was not relevant to the issue of the accused's guilt or innocence and was, thus, inadmissible during the guilt phase of trial; we noted, however, that "a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant." 663 So.2d at 1005. After thoroughly reviewing the record of this present case, we conclude that the limited testimony regarding Ms. Brown's infant son and the impact of Ms. Brown's death on her family, and the prosecution's limited references to such evidence, did not operate to deny Land a fair trial or to prejudice his substantial rights. Thus, we find no reversible error as to this issue.'

" *Ex parte Land*, 678 So.2d 224, 236 (Ala.), *cert. denied*, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996)."

756 So.2d at 904-05.

We find no evidence that the prosecutor's comments during closing arguments regarding the victims affected the outcome of Freeman's trial or otherwise prejudiced Freeman.

. . .

67

Freeman also claims that the prosecutor made improper comments about the victims during his closing argument. In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that victim-impact evidence was admissible for consideration by the jury at the sentencing phase of a capital murder case. " '[A] prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the penalty phase of a capital trial.' " *Hyde v. State*, 778 So.2d 199, 213 (Ala. Crim. App. 1998), *quoting McNair v. State*, 653 So.2d 320, 331 (Ala. Crim. App. 1992), *aff'd*, 653 So.2d 353 (Ala. 1994), *cert. denied*, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995). The prosecutor may also properly refer to the victim's characteristics at the sentencing stage of a capital case. *Payne*, 501 U.S. at 824-25, 111 S.Ct. 2597. "The United States Supreme Court's holding in *Payne v. Tennessee*, 'was based in large measure on the premise that this type of evidence related to the harm done by the defendant and, consequently, was a valid consideration in determining punishment to be imposed.' " *Price*, 725 So.2d at 1034, *quoting McNair*, 653 So.2d at 331.

We have reviewed the prosecutor's allegedly improper comments about the victims and conclude that those comments were proper comments about the characteristics of the victims and the consequences of Freeman's cutting short their lives. " 'The State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered an individual, so too the victim is an individual whose death represents a unique loss to society and, in particular, [to the victim's] family.' " *Burgess v. State*, [Ms. CR-93-2054, November 20, 1998] --- So.2d ----, ---- (Ala. Cr. App. 1998), *quoting Payne*, 501 U.S. at 825, 111 S.Ct. 2597.

*Freeman v. State*, 776 So.2d 160, 187 (Ala. Crim. App. 1999).

The merits of this claim were reviewed and rejected by the Alabama

Court of Criminal Appeals.  When a habeas petitioner's claim has been

adjudicated on the merits in state court proceedings, 28 U.S.C. §2254(d) forecloses relief unless either subsections 2254(d)(1) or (d)(2) are found to be applicable. *Early v. Packard*, 537 U.S. 3, 7 (2002). The burden of showing that an issue falls within subsections (d)(1) or (d)(2) is upon the petitioner. *Woodford v. Visciotte*, 537 U.S. 19 (2002). Freeman has failed to sustain this burden of proof. Freeman has not established that the State court's determination of this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the State court's determination of this issue "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. §2254(d)(1)-(d)(2). Federal habeas relief is therefore foreclosed.

Though Freeman spends a great deal of time rearguing the same legal arguments presented to the state courts, he does not point to any case that demonstrates that the Alabama Court of Criminal Appeals decision was contrary to or unreasonably applied clearly established law. The Alabama Court of Criminal Appeals did not err when it denied relief on this claim. Freeman's argument to the contrary is without merit.

## VII.  The Claim That Freeman Was Denied The Right To Trial By Jury.

Freeman contends in section VIII of his habeas corpus petition, on pages 58-61, that he was denied the right to have a jury determine all facts essential to the imposition of the punishment.

As set forth in the State's answer, Freeman's claim is procedurally defaulted because it was not raised at trial or on direct appeal.  (Answer, pp. 65-69)  Freeman does not attempt to show prejudice or a fundamental miscarriage of justice to overcome the procedural defaults of this claim. Instead, Freeman argues that he was not obligated to raise the claim on direct appeal because *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002), upon which the claim relies, had not been decided when he filed his appeal.  The Alabama Court of Criminal Appeals agreed with this argument and addressed the claims on the merits.

The Alabama Court of Criminal Appeals stated that

Freeman is not entitled to relief because *Ring* does not apply retroactively to cases on collateral review.  See *Schriro v. Sumerlin*, ___ U.S. ___, 124 S.Ct. 2519 (2004) . . . Freeman's conviction was final in 2000, some two years before the United States Supreme Court issued its opinion in *Ring*.

Moreover, even if *Ring* were applicable to Freeman's case, all of Freeman's arguments regarding *Ring* were decided adversely to him by the Alabama Supreme Court in *Ex parte Waldrop*, 859 So. 2d 1181 (Ala. 2002).  Freeman was convicted of capital murder during a robbery, capital murder during a

> burglary, and capital murder during a rape.  By its guilt-phase
> verdicts, the jury found beyond a reasonable doubt the
> aggravating circumstances necessary for the imposition of the
> death penalty.  There was no violation of *Ring* here.  Therefore,
> the circuit court properly denied these claims.

(Tab R-73 at 27-28)

Freeman argues that because his conviction was not final until after

*Apprendi* was decided, he is allowed to state a claim under *Ring* because

*Ring* merely clarified *Apprendi*, and therefore the new procedural rule was

effectively announced when *Apprendi* was decided.  Prior to *Ring*, the rule

had been that " 'the Sixth Amendment does not require that the specific

findings authorizing the imposition of the sentence of death be made by the

jury.' "  *Walton v. Arizona*, 497 U.S. 639, 648 (1990) (quoting *Hildwin v.*

*Florida*, 490 U.S. 638, 640-641 (1989) (per curiam)).  Freeman asserts that

Walton was untenable after *Apprendi*, and therefore Ring claims became

viable from the date *Apprendi* was decided rather than the date the *Ring*

opinion itself was issued.

This argument is directly contradicted by the plain language of the

Supreme Court's decision in *Schriro v. Summerlin*, 542 U.S. 348 (2004),

which stated that "Ring **announced a new procedural rule** that does not

apply retroactively to cases already final on direct review."  *Id*. at 358

(emphasis added).  Had the Court intended to state that *Ring* "clarified" a procedural rule first stated in *Apprendi*, it could have done so.  It did not.

In addition to being contrary to the Supreme Court's unequivocal language in *Summerlin*, Freeman's argument is contradicted by his own brief.  Freeman describes *Apprendi* as creating "tension" and "uncertainty" as to whether the holding in *Walton* could survive, with the majority explicitly stating that *Walton* was unaffected.  *Ring*, according to Freeman, determined that the majority "had indeed been wrong."  (Doc. 64 at 219) But the date for application of new procedural rules is not when the an opinion is issued that is "wrong"—as nearly every new procedural rule could arguably be traced back to a prior "wrong" decision by the Court that nonetheless laid the groundwork for the future reversal.  Rather, the rule becomes available when it is unequivocally "announced." *Summerlin*, 542 U.S. at 358.

Even if Freeman is correct that he is retroactive application of Ring is appropriate where a *Apprendi* had was decided before a conviction was final, that would still not be sufficient to entitle him to relief.  First, such a rule would not absolve a defendant of his obligation to raise the claim on direct appeal, rather than on collateral attack.  Freeman made no attempt to raise an *Apprendi* claim in his state court via a motion to reconsider, nor did

he raise such a claim in his certiorari petition to the United States Supreme Court. Second, Freeman cannot demonstrate that the Alabama Court of Criminal Appeals decision that *Ring* was inapplicable to his case was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Because the Supreme Court has held that *Ring* claims are not retroactive—and has never held that an exception exists for convictions that were not final when *Apprendi* was decided—the right of Freeman to raise an *Ring* claim in his Rule 32 petition was not clearly established when the Alabama Court of Criminal Appeals held that the claim was unavailable. Even if the Alabama Court of Criminal Appeals's reliance on *Summerlin* was misplaced, it was not (and is not) contrary to clearly established law. Third, the argument that *Ring* and *Summerlin* can be distinguished under the facts of this case was never presented in state court. The state courts cannot be faulted to failing to *sua sponte* consider a novel argument that, it appears, had never been offered by Freeman or passed upon in any published decision by any court. Freeman therefore cannot receive relief.

Finally, as noted above, the Alabama Court of Criminal Appeals held in the alternative that no violation of *Ring* occurred because he was convicted of capital murder during a robbery, capital murder during a

burglary, and capital murder during a rape, establishing beyond a reasonable doubt the aggravating circumstances necessary for the imposition of the death penalty. (Tab R-73 at 27-28 (citing *Ex parte Waldrop*, 859 So. 2d 1181 (Ala. 2002)) Though Ring requires that all factual determinations required for the imposition of a sentence be made by the jury, *Waldrop* held that "the weighing process is not a factual determination." 859 So. 2d at 1189.

As to the correctness of *Waldrop*, the State will not rehash the arguments supporting the holding, but will let the Alabama Supreme Court's opinion stand on its own. But a minimum, it cannot be said that it was *clearly established* by United States Supreme Court opinion at the time of the Alabama Court of Criminal Appeals's Rule 32 decision on this issue that *Waldrop* was wrongly decided. As such, Freeman cannot meet the requirements of 28 U.S.C. §2254(d), and therefore he is not entitled to any relief on this claim.[2]

---

[2] Freeman provides no briefing as to three claims: (1) the claim that he was denied his right to counsel as a result of his representation at trial by lead counsel who had a sex-change operation subsequent to his trial, set forth in section III on pages 15-19 of his habeas corpus petition; (2) the claim that trial counsel were ineffective for failing to adequately conduct voir dire, set forth in section IV(A) on pages 22-26; and (3) the claim that he is ineligible for execution because he is mentally retarded, set forth in section IX on pages 61-64 of his habeas corpus petition. Because he has not attempted to meet his burden, these claims are abandoned.

## CONCLUSION

The claims in Freeman's habeas petition are either procedurally defaulted or without merit. This Court should, therefore, deny relief on Freeman's habeas petition.

Respectfully Submitted,

Troy King
*Attorney General*


/s/ Michael A. Nunnelley
Michael A. Nunnelley (NUN006)
*Assistant Attorney General*
*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:   **Keir M. Weyble, Christopher Seeds, Christine A. Freeman, and Robin Konrad.**


/s/ Michael A. Nunnelley
Michael A. Nunnelley
*Assistant Attorney General*
*Counsel for Respondent*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130-0152
(334) 353-9242 Office
(334) 353-3637 Fax
Email: mnunnelley@ago.state.al.us