IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DAVID FREEMAN | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 2:06CV122-MHT-WC |
| RICHARD F. ALLEN, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| Respondent. | ) |
| | ) |

**PETITIONER'S REPLY TO RESPONDENT'S BRIEF ON THE MERITS**

Petitioner, David Freeman (hereinafter "petitioner"), by and through undersigned counsel and pursuant to Magistrate Judge Wallace Capel's July 30, 2007 order, submits this brief in reply to respondent's July 19, 2007 Brief on the Merits (hereinafter "Resp. Br."). Because many of the assertions contained in respondent's brief were anticipated and addressed in Petitioner's Brief on the Merits and in Opposition to Respondent's Brief on Procedural Default (hereinafter "Pet'r. Br."), this reply does not attempt to expressly answer every argument contained in respondent's latest submission. For the reasons set forth below and in petitioner's earlier pleadings, nothing in respondent's brief warrants either a refusal to authorize development and consideration of the facts petitioner has alleged, or a refusal to reach and grant relief on the merits of his constitutional claims.

GROUND I – PETITIONER'S RIGHT, AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, NOT "TO BE TWICE PUT IN JEOPARDY OF LIFE OR LIMB" WAS VIOLATED WHEN HIS TRIAL WAS PERMITTED TO GO FORWARD AFTER A PREVIOUS PROCEEDING ENDED IN THE DECLARATION OF A MISTRIAL IN THE ABSENCE OF MANIFEST NECESSITY.

Apart from a citation to the portion of its Answer asserting that this claim is procedurally barred, see Resp. Br. at 5, respondent makes no attempt to prove the actual existence of an Alabama

1

rule requiring a prisoner to raise an error on direct appeal after that error has already been fairly presented to the state appellate courts through mandamus proceedings. *See* Pet'r. Br. at 23-26. Having failed to establish a valid basis for withholding merits review, respondent has effectively abandoned its procedural bar defense. *See id.*

With regard to the merits, respondent concentrates on crediting the trial court for acting with a level of care the record does not reflect, and on faulting trial counsel for failing to meet a burden that was not theirs to bear. For example, respondent asserts that "it is apparent from the record that the court's concern extended beyond the next day. Howell had provided no indication that there was any specific date in the near future by which his sufficient recuperation would have been certain or even likely." Resp. Br. at 8 (emphasis omitted). In fact, it is not at all "apparent from the record" that the trial court was concerned with anything beyond Mr. Howell's ability to conclude the trial "the next day." *See* Vol. 22, C. 862 ("Well, based upon my observations and comments that the lawyers – I think it's going to be difficult, if not impossible, for you to come [sic] complete this case, Mr. Howell, by tomorrow. So the Court reluctantly finds that its only position at this time would be to declare a mistrial"). Furthermore, while it is true that Mr. Howell did not volunteer a date certain by which he would return to health, that is not relevant under the governing legal standard. What is relevant is that Mr. Howell was present in court and able to proceed if necessary, and the trial court did not ask for a date certain either as a means of determining whether a further continuance would have been the appropriate course, or as part of the factual inquiry necessary to ascertain the existence of manifest necessity. Instead, without exploring less drastic alternatives – and without soliciting the parties' positions in a way that would afford a meaningful opportunity to object – the court simply announced its conclusion that a mistrial would be declared.

Respondent's contention that, "[e]ven under the 'manifest necessity' standard, the trial court's actions were plainly reasonable" is similarly lacking in record support.  While respondent again faults trial counsel for being "unable to provide the court any assurance that his health was likely to improve," Resp. Br. at 9, this argument does not alter the fact that the touchstone identified by the trial judge was not some unspecified date in the future, but "tomorrow."  Additionally, although respondent asserts that "[t]he valuable time of the jury, witnesses, and counsel had already been wasted for a week," the actual number of missed court days prior to the declaration of a mistrial was three. *See* Pet'r. Br. at 29 n.12. Finally, respondent's willingness to state that "The court was within its sound discretion to determine that there existed a 'high degree of necessity' to grant a mistrial . . .," Resp. Br. at 10, does not make it so.  As previously discussed by petitioner – but barely acknowledged by respondent – clearly established federal law did not authorize a mistrial on the limited inquiry made by, or for the reason cited by, the trial court. *See* Pet'r. Br. at 28-33.

### GROUND II – PETITIONER'S RIGHTS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN HE WAS INTERROGATED AFTER INVOKING HIS RIGHT TO SILENCE AND THE INCULPATORY STATEMENTS PRODUCED BY THAT INTERROGATION WERE ADMITTED AGAINST HIM AT HIS CAPITAL TRIAL.

Respondent asserts that petitioner has not sustained his burden of proof as he has not shown that the Alabama Court of Criminal Appeals (hereinafter "CCA") reached "a decision that was based an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), or that "involved an unreasonable application of[] clearly established Federal law," *id.* § 2254(d)(1). *See* Resp. Br. at 14-15.  Respondent is wrong for several reasons.

Respondent argues that petitioner's statement to the interrogating officer that "he couldn't

talk about [the crime]," Vol. 40, R. 598, was not an assertion of his right to cut off questioning. Resp. Br. at 15. Respondent believes that the CCA "correctly found that this statement 'appears to be Freeman's [sic] simply saying that he did not like talking about the brutal murders,' an interpretation supported by the fact that he was 'more than willing to handwrite a statement about the murders.'" Resp. Br. at 15 (citing *Freeman*, 776 So.2d 160, 175 (Ala. Crim. App. 1999). Petitioner's eventual agreement to hand write a confession, however, cannot reasonably be viewed as a mere expression of his "desire to conduct the interview the way he wanted it conducted," as the CCA found and respondent argues. Resp. Br. at 16 (citing *Freeman*, 776 So.2d at 175). Rather, that conclusion wholly ignores both officer Graves' testimony and petitioner's limited intellectual capacity. Officer Graves, by his own admission, Vol. 40, R. 599, was the person who suggested that petitioner handwrite a statement – this was not a concept introduced by petitioner to "conduct the interview the way he wanted." Likewise, the CCA had before it petitioner's mental limitations, including his low IQ, his placement in special education, his mental health problems, and his sixth-grade education. To ignore all of these factors and reach the conclusion that petitioner was merely manipulating the conditions of the interview in a fashion he desired is unreasonable. The CCA's decision (and respondent's argument) is contradicted by the record that was before the state courts, and was unreasonable. *See*, *e.g.*, *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005) (observing that "[i]t is true that at some points the . . . evidence is open to judgment calls, but when this evidence . . . is viewed cumulatively its direction is too powerful to conclude anything but discrimination," before holding that state court's finding was wrong and unreasonable under §§2254(e)(1) and (d)(2)).

Moreover, although respondent's brief conveniently ignores this fact, the CCA reached its conclusion based, in part, on its finding that petitioner was "cooperative throughout all of the

questioning, and [] he was responsive to *all* of their questions." *Freeman*, 776 So.2d at 175 (emphasis added). As noted in petitioner's earlier brief, this conclusion is contradicted by officer Graves' own testimony; if petitioner were responsive to all of the questions, Graves would have had no occasion to evade petitioner's invocation of his right to silence. *See* Pet'r. Br. at 41-42. Nor would officer Graves have had to "talk[] to [petitioner] a little bit more" after he gave his first written statement. Vol. 41, R. 604. Indeed, the reason Graves found it necessary to not only sidestep petitioner's assertion of his right to remain silent but also prod petitioner to make an inculpatory statement was because petitioner was *not cooperative* and was *unresponsive* to the only question the state wanted answered.

Respondent also claims that petitioner has not correctly argued that the CCA's adjudication of the issue "involved an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1), claiming that petitioner points to "no case that establishes that the [CCA's] decision was in error *given its factual determinations*." Resp. Br. at 17. However, as explained in petitioner's merits brief, "[t]he CCA's effort to justify Graves' subsequent interrogation as an innocuous attempt to 'clarify[] the equivocal request' was unreasonable because it applied [the] *Davis* [*v. United States*, 512 U.S. 452 (1994),] 'clear and unequivocal' standard outside the context of a right to counsel invocation[], and because it left the real constitutional question — whether petitioner's right to silence was 'scrupulously honored' — unanswered." Pet'r. Br. at 48. This argument was supported with clearly established Supreme Court precedent and legal analysis in pages 44 through 50 of petitioner's brief. Respondent's assertion otherwise is disingenuous.

### III.   GROUND IV – INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Respondent contends that petitioner is not entitled to merits review of his ineffective

assistance of counsel claims or the facts supporting them, and that even if the merits are reached, petitioner cannot prevail under 28 U.S.C. §2254(d). Because petitioner has already provided the Court with comprehensive briefing establishing his entitlement to merits review, and to rely upon the evidence developed during these federal habeas proceedings, he will not cover that ground again. Instead, petitioner will begin by identifying and discussing the defects in the arguments against merits review and evidentiary development set forth in parts III.B.1. through 3. of respondent's brief. Petitioner will then address the contentions in part III.C. of respondent's brief that all of his ineffective assistance of counsel claims are "procedurally defaulted or meritless." Resp. Br. at 41.

      **A.**    **Part III.B.1 of Respondent's Brief: "The Court of Criminal Appeals committed no error in finding that Freeman failed to meet his pleading obligations."**

Respondent's defense of the CCA's application of its Rule 32.6(b) specificity requirement as a bar to consideration of petitioner's claims and the evidence supporting them relies in part on overestimation of the value of a single unpublished decision by the United States Court of Appeals for the Eleventh Circuit, in part on inaccurate statements about the state court proceedings, and in part on wholesale avoidance of several of petitioner's arguments.

Respondent begins with the declaration that "The Alabama Court of Criminal Appeals's finding that a petitioner failed to comply Rule 32.6(b) [sic] is a sufficient state law grounds [sic] for precluding federal habeas corpus review of a claim." Resp. Br. at 24. The only ostensible support respondent offers for this declaration is a lengthy block quote from the Eleventh Circuit's unpublished opinion in *Jenkins v. Bullard*, 210 Fed.Appx. 895 (11th Cir. 2006) (*per curiam*). *See* Resp. Br. at 24-26. While respondent presumably intends the *Jenkins* quote to address petitioner's detailed arguments on why Rule 32.6(b) as construed by the CCA and applied to petitioner cannot

serve as a bar to merits review or fact development, respondent offers virtually no explanation for how it does so.

Respondent's only statement even attempting to relate *Jenkins* to this case comes in its single-paragraph response to petitioner's argument that Rule 32.6(b) as construed by the CCA is not independent of federal law. Presumably because it has no forceful argument that the CCA's application of Rule 32.6(b) in this case was actually independent of federal law, respondent seeks to rely exclusively on *Jenkins*, asserting that "in nearly identical circumstances, the Eleventh Circuit has already concluded that a Rule 32.6(b) dismissal applied to ineffective assistance of counsel claims was sufficiently independent to require preclusion." Resp. Br. at 29 (citing *Jenkins*, 210 Fed. Appx. at 899-901). *Jenkins*, however, says no such thing. In fact, an electronic search of the *Jenkins* opinion for "independ" yields a single occurrence of the word "independent," and that occurrence appears as part of the court's description of the appellate procedures mandated by *Anders v. California*, 386 U.S. 738 (1967). There is thus no indication that Jenkins ever argued, or the Eleventh Circuit ever resolved, the question whether the CCA's construction and application of the Rule 32.6(b) specificity requirement was independent of federal law.

*Jenkins* is equally inapposite on the points respondent does not mention at all. While the Eleventh Circuit did hold that Jenkins' ineffective assistance of appellate counsel claims were procedurally barred as a result of the CCA's application of Rule 32.6(b), the court did not even purport to resolve any of the challenges petitioner has raised in this case. More specifically, the court neither addressed nor resolved: the inadequacy of the rule where a petitioner is misled during the state court proceedings, Pet'r. Br. 68-76; the inadequacy of the rule where a petitioner has substantially complied, Pet'r. Br. 76-81; or the inadequacy of the rule where its application by the

7

state court is exorbitant and manifestly unfair, Pet'r. Br. 81-85.[1]  In short, *Jenkins* is far from a panacea for the ills infecting the CCA's application of the specificity rule in this case, and respondent's exclusive reliance on it is no answer for the arguments petitioner has already submitted.

Apart from its reliance on *Jenkins*, respondent's only other response to the defects preventing the CCA's order from barring merits review and fact development is that petitioner has misstated the relevant procedural history.  That is not so.  For example, respondent asserts that petitioner "attempts to suggest that [the CCA's] ruling was improper because the State did not assert [the specificity] argument in the Rule 32 court."  Resp. Br. at 26-27.  Petitioner has made no such suggestion; in fact, his Brief on the Merits and in Opposition to Respondent's Brief on Procedural Default expressly states that, "In response to petitioner's initial and first amended Rule 32 petitions, the state submitted answers and accompanying motions for dismissal of various claims for failure to satisfy the specificity requirement of Rule 32.6."  Pet'r. Br. at 52.

Respondent also observes that,

> Strangely, Freeman claims that the State abandoned these [specificity] arguments because it did not assert them orally at a January 23, 2002, hearing. By this time, however, the State had already moved for the dismissal of claims pursuant to Rule 32.6(b), and the circuit court had already denied the motion. Similarly, Freeman infers that the State retracted its Rule 32.6(b) arguments because the State's proposed

---

[1]That the Eleventh Circuit did not resolve (and Jenkins apparently did not raise) these issues is unsurprising given the nature of Jenkins' claims, which asserted that appellate counsel had been ineffective for failing to raise a series of record-based ineffective assistance of trial counsel claims. Unlike the claims in petitioner's Ground IV, Jenkins' claims required no additional resources or fact development, and were unlikely to be informed by anything other than the trial record and perhaps the testimony of trial and appellate counsel.  Furthermore, unlike what occurred during petitioner's state court proceedings, there is no indication in the *Jenkins* opinion that the petitioner was either misled by the state circuit court or denied an opportunity to amend his pleadings once a pleading defect had been identified.  Given these material distinctions, respondent's characterization of the circumstances in *Jenkins* as "nearly identical" to this case is obviously wrong.

> order . . . did not hold that the claims were barred by Rule 32.6(b).
> The State is not required to harass the court by repeating motions that
> it has already raised and which have already been ruled upon.

Resp. Br. at 27-28 (internal citations omitted).  Respondent is correct that its first Motion for Partial

Dismissal Pursuant to Rule 32.6(b) was denied without comment on November 5, 2001.  From there,

however, respondent's recitation becomes revisionist history.  Just over three weeks after the circuit

court denied its first motion to dismiss under Rule 32.6(b), respondent filed a nearly identical motion

in response to petitioner's first amended Rule 32 petition.  Vol. 48, C. 105.  That motion was not

denied by the circuit court until the January 23, 2002 order entered after the motions hearing – at

which respondent did not mention its Rule 32.6(b) defense – conducted earlier the same day.

Moreover, far from being deterred by the prospect of "harass[ing] the court by repeating motions,"

respondent raised its Rule 32.6(b) arguments – which had already been rejected twice by the circuit

court – again in its answer to the fourth amended Rule 32 petition.  *See* Tab R-58, Vol. 49.  Thus,

whether or not a rational explanation exists for respondent's failure to include Rule 32.6(b) in its

January 23, 2002 arguments, in the order denying relief it wrote for the circuit court, or in its brief

to the CCA, it cannot be that respondent believed itself to be constrained by the circuit court's prior

rulings.[2]

      Respondent's brief is perhaps most notable for what it does not say.  Whereas petitioner

presented a detailed discussion of the reasons why the CCA's application of Rule 32.6(b) is

---

[2]Respondent's assertion that, "before the Rule 32 court, Freeman chose not to respond to the State's motion seeking dismissal of his claims under Rule 32.6(b)" is also wrong.  As described in his brief, petitioner did respond directly to the State's initial Rule 32.6(b) motion by moving for a more definite statement of the defects respondent claimed to have identified, and by giving notice that his efforts to develop and plead additional facts were ongoing, and were dependent upon access to investigative and expert assistance.  *See* Pet'r. Br. at 52.  Respondent never addressed petitioner's motion, and the resources petitioner sought were denied by the state courts.

9

inadequate to bar consideration of petitioner's claims and evidence under federal law, *see* Pet'r. Br. at 68-85, respondent has answered with nothing more than a handful of mischaracterizations of the record. For example, respondent does not challenge petitioner's assertions: that he was entitled to, and did, rely upon the circuit court's rulings and Rule 32.7(d); that petitioner substantially complied with Rule 32.6(b) by placing before the circuit court ample information relating to his claims through submissions other than the actual petition for Rule 32 relief; that the CCA strayed from established rules by raising Rule 32.6(b) *ex mero motu*; that the CCA's application of Rule 32.6(b) while simultaneously endorsing a complete denial of resources essential to specific pleading was exorbitant and unfair; or that, in a number of instances, the CCA's formulation of its specificity requirement was so demanding that no indigent prisoner could have complied with it absent access to substantial resources, which the state refused to make available.

These and similar arguments set forth in petitioner's brief amount to a strong showing that the CCA's Rule 32.6(b) dispositions cannot operate to bar review by this Court. Respondent bears the burden of establishing the existence of a valid bar notwithstanding the defects petitioner has identified, and that burden cannot be met by ignoring the issues as respondent's brief does. *See* Pet'r. Br. at 25-26 (collecting cases); *see also Moore v. Quarterman*, 491 F.3d 213, 219 n.10 (5th Cir. 2007) (state waived argument that claim was procedurally barred due to state court's dismissal on independent and adequate state ground by offering no argument in support of default defense other than that "the issue is certainly debatable").

      **B.**    **Part III.B.2 of Respondent's Brief: "Freeman's Rule 32 Petition did not satisfy the full and fair presentation requirement."**

In this section of its brief respondent charges that, "In an effort to distract this Court from his

repeatedly [sic] attempts to expand his claims far beyond the allegations presented in state collateral proceedings, Freeman confounds [sic] the State's arguments regarding his failure to fairly present the claims below [sic] with its arguments concerning his failure to comply with Rule 32.6(b)." Resp. Br. at 30.  The discussion that ensues, however, fails in its stated purpose of establishing that respondent's "two arguments . . . are distinct," *id.*, and succeeds only in supplying further reinforcement for petitioner's contention that the central question in determining whether his claims and the facts supporting them can be considered is whether the CCA's Rule 32.6(b) rulings rest on independent and adequate state law footing.  *See* Pet'r. Br. at 59-60.

Respondent asserts the existence of two independent bases for refusing to consider petitioner's claims and evidence: (1) petitioner violated the fair presentation requirement when he filed a federal habeas petition with this Court containing more detail than the Rule 32 petitions he submitted to the state circuit court; and (2) the CCA's determination that the allegations contained in the Rule 32 petitions submitted to the state circuit court were insufficient under Rule 32.6(b) constitutes a procedural bar to merits review by this Court.  *See* Resp. Br. at 32.  As discussed below, however, to accept respondent's declarations that its fair presentation and procedural bar theories "*are not inextricably linked,*" Resp. Br. at 32 (emphasis by respondent), would require this Court to depart substantially from established federal law.

Before describing the material differences between respondent's version of the fair presentation requirement and what federal law actually prescribes, it is helpful to identify what respondent has *not* argued.  First, respondent has not asserted that the substance of petitioner's claims as they were presented in his appellate brief to the CCA and his petition for certiorari to the

Supreme Court of Alabama did not constitute fair presentation to those courts.[3]  Second, respondent

has not asserted that petitioner has modified any of the legal theories he presented to the state courts;

on the contrary, respondent's express complaint is that "a comparison of Freeman's Fourth Amended

Rule 32 Petition to his federal habeas corpus petition reveals numerous instances where the habeas

petition adds significant *new factual allegations* to the analogous claim."[4] Resp. Br. at 31 (emphasis

added).

Accounting for what respondent has not asserted, the fair presentation violation it insists

constitutes one of two distinct reasons for refusing to consider petitioner's claims must have

occurred because the facts (but not the legal theories) alleged within the four corners of the Rule 32

petitions filed with the state circuit court (but not the briefs filed with the appellate courts) are not

the same.  There are several problems with this theory.  First, and perhaps most fundamentally,

petitioner is aware of no precedent for the proposition – which is central to respondent's entire fair

presentation argument – that where the factual allegations presented to a state appellate court are

sufficient, but the factual allegations presented to an antecedent lower court are not, the federal

habeas court should treat the issue as one of "fair presentation" as "distinct" from possible

procedural default.[5]

Second, respondent clearly proposes to measure "fair presentation" in terms much closer to

---

[3]Nor could respondent have merely overlooked this point, since petitioner discussed it expressly in his earlier brief.  *See* Pet'r. Br. at 57.

[4]As to this assertion, respondent offers only one example: Ground IV.A. *See* Resp. Br. at 33-34.  As stated in his brief, however, petitioner is no longer pursuing that claim. *See* Pet'r. Br. at 20 n.9.

[5]Apparently, respondent is equally incapable of locating relevant authority since none of the decisions it cites support this proposition.

(if not identical to) the CCA's Rule 32.6(b) standard than to established federal habeas jurisprudence.  While respondent's approach seems to call for an exacting, line-by-line comparison between the language contained within the four corners of a Rule 32 petition submitted to a lower state court and the corresponding language alleged in a federal habeas petition, federal habeas law is not so demanding.  Under federal law, exhaustion is accomplished when a prisoner has presented "the substance of a federal habeas corpus claim . . . to the state courts." *Picard v. Connor*, 404 U.S. 270, 278 (1986).  And while the "substance" of a claim includes both the legal theory and the facts upon which it is based, differences between the factual allegations presented to the state and federal courts do not raise an exhaustion problem unless they "fundamentally alter the legal claim already considered by the state courts."  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).  As noted above, respondent has identified no fundamental alterations of any of the legal claims petitioner presented to the state courts.[6]

Furthermore, and contrary to respondent's approach, federal law does not confine the fair presentation assessment to the four corners of a particular document submitted to a lower state court.

---

[6]For example, in response to claim IV.C., respondent contends that petitioner's arguments that "[1]'despite the fact that Renfro's report indicated findings inconsistent with the defense theory that petitioner was not guilty by mental disease or defect, defense counsel chose to depose Renfro prior to trial' and [2] that this deposition 'demonstrates how aimless and incoherent the defense case was' or [3] that '[i]n addition to undermining the insanity defense, counsel's error also negatively affected their credibility before the jury,'" are "added allegations" that render the claim unexhausted. Resp. Br. at 48 (quoting Pet'r. Br. at 32-33).  But the issue here is the same as it was before the state courts.  Petitioner argues, here as in state court, that under *Strickland v. Washington*, 466 U.S. 668 (1984), trial counsel were deficient for deposing Dr. Renfro, whom they knew reached conclusions harmful to the defense, and that counsel's performance prejudiced petitioner. *See* Pet'r. at 108.  Of the specific arguments respondent cites, the first simply reiterates the deficient performance allegation, and the second and third describe why this is so without altering the claimed deficiency or resulting prejudice. *Cf. Picard*, 416 U.S. at 277-28 (finding challenge to procedure for amending indictment was not "substantial equivalent" of equal protection challenge subsequently raised in federal court).

Instead, as the Eleventh Circuit recently illustrated, it is entirely appropriate for a federal court to look to the totality of what the prisoner placed before the state post-conviction courts when determining whether the substance of a claim was fairly presented. *Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) (reversing dismissal of federal petition where state petition contained only "bare allegation" of ineffective assistance but petitioner nevertheless accomplished fair presentation "through his direct testimony, the examination of his post-trial attorney, the entry of his *pro se* memorandum into evidence, and the filing of a post-hearing brief"); *see also*, *e.g.*, *Conner v. Quarterman*, 477 F.3d 287, 292-293 (5th Cir. 2007). As described in his earlier brief, the facts and circumstances put before the state circuit court in support of petitioner's claims were not confined to the language contained in his Rule 32 petitions, and petitioner was given every reason to believe that the circuit judge was aware of, and authorized to utilize, that information in resolving the case. *See* Pet'r. Br. at 73-75; 79-80.

In sum, from its exclusive focus on the content of the petitions submitted to the state circuit court to its demand for mirror image symmetry between those petitions and the petition submitted to this Court, it is clear that respondent is concerned with something other than "fair presentation" as that concept is defined in federal habeas law. That other "something," of course, is petitioner's alleged noncompliance with Rule 32.6(b) as found by the CCA, and the consequences of that finding in the proceedings before this Court. As described in detail in petitioner's earlier brief, that is a question for procedural default law, and that law does not prohibit consideration of petitioner's claims or supporting facts under the circumstances of this case.

C.    **Part III.B.3 of Respondent's Brief: "Freeman has not demonstrated that he is entitled to the consideration of additional facts, much less further evidentiary hearings."**

Respondent begins this section of its brief with the assertion that "Freeman relies on *Vasquez v. Hillery* . . . for the proposition that he may present new claims backed by new evidence." Resp. Br.  In fact, petitioner has never contended that *Vasquez* entitles a habeas petitioner to "present new claims," nor has he attempted to bring any new claims in his petition. Indeed, while respondent decries the presentation of "whole new subclaims," Resp. Br. at 36, it does not say what they are. If by "whole new subclaims" respondent is referring to differences in language between the factual allegations presented to the state circuit court and this Court, then petitioner adheres to his position, discussed *supra* and in his earlier brief, that he has not run afoul of the exhaustion requirement.[7] Respondent's assertion that the Sixth Circuit's unpublished decision in *Brandon v. Stone*, 226 Fed.Appx. 458 (6th Cir. 2007), "rebuked exactly the interpretation of *Vasquez* offered by Freeman," Resp. Br. at 36, is inapposite.  *Brandon* merely enforces *Vasquez*'s distinction between new legal claims and supplemental facts, and petitioner has not taken issue with that distinction.

Respondent also asserts that "Freeman . . . argues, without legal grounding, that he is entitled to a new evidentiary hearing because this case falls outside of §2254(e)(2)." Resp. Br. at 38.

_____

[7]While it is impossible to tell from its brief, it may be that respondent is using the same definition of "subclaim" that it advocated unsuccessfully at the June 28, 2006 Case Conference. Under that definition, respondent claims the unprecedented power to dissect a habeas petitioner's grounds for relief fact by fact and legal proposition by legal proposition, recast them all as individual "claims," and then criticize the petitioner for not having presented those individual "claims" to the state courts in the same form.  Respondent has never proffered any authority for the proposition that a defendant in a civil action is vested with such power to redraw a plaintiff's allegations in ways more susceptible to the defendant's procedural defenses.  Magistrate Judge McPherson rejected respondent's bid to exercise such power during the Case Conference, and respondent has come forward with no reason to question the soundness of that conclusion.

Respondent then attacks petitioner's request for an evidentiary hearing on two grounds, neither of which come close to justifying the denial of an evidentiary hearing. Respondent first states that petitioner "has added claims . . . asserting that he was improperly denied funds for various experts during Rule 32 proceedings," and observes that, "[t]o the extent this attempts to raise an independent claim for relief, it is without merit." Resp. Br. at 38. Once again, respondent mischaracterizes petitioner's positions. Petitioner has not added "claims" of improper funding denials by the state courts, nor has he asserted the state courts' denial of resources as "an independent claim for relief." In fact, when respondent insisted on recasting the allegations in his federal habeas petition in that manner during preparation of the Joint Report, petitioner made clear that he did not share or otherwise endorse respondent's views. *See, e.g.*, Joint Report at 28; 37; 53; 66.

Respondent's other line of opposition to petitioner's request for an evidentiary hearing is as follows:

> Freeman's argument is . . . undermined by the facts of this case. Keir M. Weyble has been lead counsel for Freeman throughout both his Rule 32 and federal habeas corpus proceedings. Freeman has not provided any explanation why the lack of funds for experts prevented him from properly pleading his allegations in state court, **given that he has managed to add new allegations to the habeas corpus petition even though he still has not received any funds for expert assistance**. Mr. Weyble's failure to present facts in state court that he is prepared to now present in federal court establishes that Freeman's pursuit of these claims lacked diligence sufficient to prevent further expansion of the record.

Resp. Br. at 40 (emphasis by respondent). Stated more clearly, respondent appears to contend that the facts presented for the first time to this Court were developed without expert assistance, and

16

could therefore have been developed and presented to the state courts by diligent counsel.[8]

Respondent's premise is fundamentally wrong. As explained in his earlier brief, the fact development that has occurred since the state court proceedings ended was made possible because – and only because – petitioner was finally able to secure the investigative and expert resources he was denied by the state courts. *See* Pet'r Br. at 93-95. While respondent may not know – and has no present right to know – the particulars concerning the resources expended and the personnel utilized in developing these facts, petitioner's brief served notice in no uncertain terms that assistance had been secured and development had taken place as a direct result of that assistance. Respondent's assertion that petitioner "still has not received any funds for expert assistance" is therefore baffling.

Moreover, and perhaps more importantly, respondent's brief contains no other argument that the additional evidence supporting Grounds IV.B, D, E, and F and Ground V described in petitioner's earlier brief could have been developed by Rule 32 counsel without investigative and expert assistance. Furthermore, aside from its boilerplate (and inconsistent, *see infra*) procedural default and §2254(d) arguments, respondent's brief does not dispute that the additional evidence petitioner has described, if proven, would warrant a grant of relief. *Townsend v. Sain*, 372 U.S. 293, 312 (1963). Thus, in addition to being correct as a matter of law and fact, petitioner's assertions that he did not "fail to develop" the facts relating to Grounds IV.B, D, E, and F and Ground V within the meaning of 28 U.S.C. §2254(e)(2), and that he is entitled to an evidentiary hearing, are also essentially uncontested.

---

[8]As noted in his earlier brief, Grounds IV.B, D, E, and F and Ground V underwent additional factual development after these federal habeas proceedings were initiated.

Finally, although respondent has raised no meaningful challenge to petitioner's assertion that his conduct during the state court proceedings was sufficiently diligent to take his request for an evidentiary hearing outside the purview of §2254(e)(2), it should be noted that the Supreme Court's recent decision in *Panetti v. Quarterman*, 127 S.Ct. 2842 (2007), provides further support for petitioner's position. There, as here, the prisoner's state court counsel requested access to the resources necessary to develop material facts, but was summarily denied. *See Panetti*, 127 S.Ct. at 2850-2851. And there, as here, the denial of the prisoner's funding requests left him unable to develop or present the evidence proving his claim. *See id.* at 2858. Unlike the CCA in this case, however, the Supreme Court did not fault the prisoner for his inability to develop what was beyond his reach without the requisite resources. Instead, the Supreme Court took note of state court counsel's "sustained effort, diligence and compliance with court orders," and declared the state court's procedures for adjudicating the prisoner's claim so inadequate as to render §2254(d)'s limitation on relief inapplicable to the evaluation of the state court's denial of relief. *Id.* at 2855. Petitioner's efforts during the state court proceedings in this case were no less sustained or diligent than those undertaken by counsel in *Panetti*, and for this additional reason §2254(e)(2) does not bar an evidentiary hearing in this case.

**D.    The merits of petitioner's ineffective assistance of counsel claims.**

Respondent's treatment of the merits of petitioner's ineffective assistance of counsel claims says so little, and says it so repetitively, that little is required in reply. For each of petitioner's claims, respondent first recites its contention that the CCA's specificity ruling operates as a procedural bar to merits review; in some instances respondent adds its assertions that a claim is not exhausted; and for each claim respondent further argues that §2254(d) bars relief. *See generally*

18

Resp. Br. at 41-56. Petitioner has already addressed respondent's procedural bar and exhaustion arguments and will not burden the Court by repeating them. Petitioner has also previously explained that the CCA's rejection of some or all of the components of his ineffective assistance of counsel claims on purportedly procedural grounds, and its failure to reach other components entirely, renders §2254(d) inapplicable by its own terms. *See* Pet'r. Br. at 104; 117; 160-161; 167.

Although respondent does not address petitioner's explanations for §2254(d)'s inapplicability, it does appear to assume that the statute's "adjudicated on the merits" trigger can be satisfied by a state court's comments on the merits in the "alternative." *See* Resp. Br. at 46. That assumption is not correct. For purposes of §2254(d)'s "adjudicated on the merits" clause, a state court decision either disposes of a claim on the merits or it does not; respondents are not free to hedge by arguing that the state court's primary basis for rejecting a claim was procedural, but that, in any event, the state court's comments on the merits in the alternative bring the statute's limitation on relief into play. *Fisher v. Texas*, 169 F.3d 295, 299-300 (5th Cir. 1999) (rejecting state's contention that footnote in state court of appeals' decision disposing of petitioner's claim on the merits in the alternative satisfies §2254(d)'s "adjudication" requirement). Indeed, if state courts' alternative rulings carried the force respondent appears to suggest, then there would be no principled reason for a federal court to recognize a procedural bar to merits review where a state court's rejection of a claim relies primarily on procedural grounds, but contains alternative language about the merits. That, of course, is not the law. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Finally, it should be observed that, aside from its procedural defenses, respondent has not challenged the substance or legal consequences of a single word of the evidence petitioner has developed in these proceedings. That evidence and the descriptions of the efforts and resources that

were required to identify and develop it should therefore be regarded as uncontested as the Court

considers the issues relating to petitioner's entitlement to merits review, an evidentiary hearing, and

habeas relief. *See generally* Rules 8(d) and 12(b), FRCP; *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th

Cir. 1994) (citing *Villanueva v. CNA Ins. Cos.,* 868 F.2d 684, 687 n. 5 (5th Cir.1989)) ("A party who

inadequately briefs an issue is considered to have abandoned the claim"); *Pratt v. Upstate*

*Correctional Facility*, 413 F.Supp.2d 228, 238 (W.D.N.Y. 2006) ("While this Court will rule on any

legitimate claim before it, any suggestion that this Court search for flaws in petitioner's claims to

aid respondent in its responsibilities is wholly inappropriate. The Court does not represent

respondent and is not in the business of making respondent's legal arguments for it").

### GROUND V – PETITIONER'S RIGHT TO A FAIR SENTENCING PROCEEDING AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED BY THE ADMISSION OF UNRELIABLE AND MATERIALLY INACCURATE EVIDENCE.

Respondent fails to present any valid argument against the merits of petitioner's claim that

he was denied a fair sentence due to the admission of unreliable and materially inaccurate evidence.[9]

Instead, respondent asserts that the claim is procedurally defaulted and attempts to explain that

petitioner could have raised this claim at trial or on direct appeal, missing the entire point made in

petitioner's merits brief – *i.e.*, that the evidence admitted at trial and in the record on direct appeal

was materially inaccurate. Moreover, in its weak effort to distinguish *Johnson v. Mississippi*, 486

U.S. 578 (1988), respondent reiterates that petitioner, unlike Johnson, could have raised this claim

---

[9] Indeed, the only attempt to respond to the merits involves an attack on petitioner for failing to cite to any affidavits in support of his "numerous factual contentions." Resp. Br. at 59. However, according to the Rules Governing Section 2254 Cases in the United States District Courts, there is no requirement that a petitioner submit affidavits with a brief. *See, e.g.,* Rules 7 and 8 (judge may ask for expansion of the record through, *inter alia*, affidavits, or may grant evidentiary hearing). Nor has this Court asked petitioner to submit any sworn statements in support of his factual allegations.

at trial.  However, as explained in detail in petitioner's merits brief, without further investigation, which naturally occurs during collateral proceedings rather than on direct appeal, petitioner was unable to make this claim at trial or on direct appeal.  Respondent makes no attempt to explain why petitioner's constitutional argument – that he should not have been sentenced to death based on materially inaccurate evidence – is invalid.

### GROUND VI – APPELLATE COUNSEL'S FAILURE TO CHALLENGE THE ADMISSION OF THE PRIOR TRIAL TESTIMONY OF WITNESS FRANCIS BOOZER VIOLATED PETITIONER'S RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Respondent's characterization of petitioner's argument that appellate counsel was ineffective for failing to challenge the admission of the prior testimony of witness Francis Boozer is inaccurate and misleading.  Respondent argues that petitioner has cited to no state law "that suggests that the trial court's allowance of Boozer's testimony was in error."  Resp. Br. at 62; *see also id.* at 63.  The assertion is plainly incorrect.  As discussed in petitioner's brief, *Scroggins v. State*, 727 So.2d 131 (Ala. 1998), explicitly held that prior witness testimony was inadmissible where the only evidence supporting unavailability of the witness was the word of the district attorney's investigator.  *See* Pet'r. Br. at 182.  Further, the cases cited in petitioner's brief that require a party, in order to establish the admissibility of prior testimony, to exhaust all reasonable leads – which the state failed to do here – also suggest that admitting Boozer's testimony was error.  Pet'r. Br. at 180 n.80 (citing, *e.g.*, *Johnson v. State*, 623 So.2d 444 (Ala. Crim. App. 1993); *Nolen v. State*, 469 So.2d 1326 (Ala. Crim. App. 1985); *Matkins v. State*, 521 So.2d 1040, 1041-42 (Ala. Crim. App. 1988)).  So does *Flowers v. State*, 799 So. 2d 966, 974 (Ala. 2000), in which the court held that merely ascertaining that a witness is out of state does not support admissibility, but nevertheless found the error harmless.

Respondent also asserts that petitioner has not cited any federal case "suggest[ing]" that the trial court erred in allowing Boozer's testimony, *see* Resp. Br. at 62, but then proceeds to attempt to distinguish *United States v. Acosta*, 769 F.2d 721, 722 (11th Cir. 1985), in which the federal court of appeals upheld a lower court determination excluding prior testimony because the only basis for unavailability was defense counsel's assertion that "she's got a baby . . . and the baby is not well." Respondent's description of *Acosta* is confused. Respondent argues that "[t]he trial court did not hold that the hearsay testimony was inadmissible, but rather held it was uncompelling." Resp. Br. at 62. To the contrary, the Eleventh Circuit explicitly held that the prior testimony was inadmissible because counsel's statement "in and of itself, was not sufficient to satisfy the proponent's burden of demonstrating that the witness was unavailable." *Acosta*, 769 F.2d at 722. *Acosta* makes another point that is germane here: It is the proponent's burden to prove unavailability. *See Acosta*, 769 F.2d at 723; *see generally* Pet'r. Br. at 177. Respondent faults petitioner for failing to "offer any evidence or even allegation that Boozer was not, in fact, unavailable." Resp. Br. at 62. But the burden was on the state at trial, not the defense, to prove the admissibility of the prior testimony it sought to present from Boozer, who is now deceased. *See Scroggins*, 727 So.2d at 133.

Finally, respondent's argument that the current claim was not raised or properly exhausted in state court, Resp. Br. at 60-61, *id.* at 63, is also incorrect. Petitioner's Ground VI is the "substantial equivalent" of the ineffective assistance of appellate counsel claim raised in the state courts. *See Picard*, 416 U.S. at 277-78.

### GROUND VII – THE PROSECUTION'S VICTIM IMPACT ARGUMENTS VIOLATED PETITIONER'S RIGHTS AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Respondent states that "[Freeman] does not point to any case that demonstrates that the

Alabama Court of Criminal Appeals decision was contrary to or unreasonably applied clearly established law." Resp. Br. at 69. It is evident, however, that petitioner is relying on *Payne v. Tennessee*, 501 U.S. 808 (1991), and *Booth v. Maryland*, 482 U.S. 496 (1987). *See* Pet'r. Br. at 186, 193-201. Those cases forbid imposition of a death sentence on the ground that victims were praiseworthy members of the community or on the ground that a surviving family member desired that sentence.

Further, although respondent does not mention it, a note is warranted with respect to this claim following *Fry v. Pliler*, 127 S.Ct. 2321 (2007). Petitioner's brief asserted that "[t]he objectionable victim impact evidence could not have been harmless under either *Chapman v. California*, 386 U.S. 18 (1967), or *Brecht v. Abrahamson*, 507 U.S. 619 (1993)," Pet'r. Br. at 201, and argued that "[b]ecause the state court failed to reach or resolve the Eighth Amendment challenges [to the victim impact evidence and argument] raised on direct appeal, those issues should be evaluated only under *Chapman*," Pet'r. Br. at 201 n.90. In *Fry*, however, the United States Supreme Court held that "in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it [under *Chapman*]." 127 S.Ct. at 2328.

The Court also made clear in *Fry* that the AEDPA, under which habeas relief shall not be granted unless a state court determination is "contrary to, or involved an unreasonable application of clearly established Federal law," 28 U.S.C. §2254(d)(1), did not replace the *Brecht* standard for prejudice. 127 S.Ct. at 2326-27. On the contrary, the Court held that *Brecht* "obviously subsumes" the §2254(d) inquiry for claims subject to harmless error analysis, such that a finding of harmful

23

error under *Brecht* necessarily satisfies §2254(d) and requires a grant of habeas relief. *See id.* Accordingly, the prejudice arising from the prosecutor's improper and inflammatory victim-impact argument should be assessed, for both the Due Process violation (on which the state court ruled) and the Eighth Amendment violation (on which the state court did not rule), under *Brecht*.

The *Brecht* standard, though stricter than the *Chapman* standard, still "imposes a significant burden of persuasion on the State." *Fry*, 127 S.Ct. at 2328 (Stevens, J., concurring in part and dissenting in part). It requires a "fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Here, respondent has made only general assertions that the state court determination does not offend §2254(d), and otherwise has done no more than reiterate the state court's determination – which did not address the merits of the Eighth Amendment violation. *See* Resp. Br. at 64-69. Respondent has come nowhere close to meeting the burden of persuasion that *Brecht* requires. As petitioner's brief explains, Pet'r. Br. at 201-203, the prosecutor's emotional appeal for jurors to consider the value of the victims' lives and what the victims' sister, Deborah Gordon, wanted as a verdict did have "a substantial and injurious effect or influence" on the sentencing determination. *Brecht*, 507 U.S. at 631.

**GROUND VIII – PETITIONER'S RIGHT TO TRIAL BY JURY, AND TO HAVE A JURY DETERMINE ALL FACTS ESSENTIAL TO THE IMPOSITION OF THE PUNISHMENT HE RECEIVED, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, WAS VIOLATED WHEN THE TRIAL JUDGE, RATHER THAN THE JURY, DETERMINED THE FACTS NECESSARY TO INCREASE HIS SENTENCE FROM LIFE WITHOUT PAROLE TO DEATH.**

Petitioner has already anticipated and addressed most of respondent's arguments with regard to Ground VIII. A few of respondent's assertions, however, warrant a brief reply. First, respondent

argues that, even if petitioner is entitled to the benefit of *Apprendi* and *Ring*, "that would still not be sufficient to entitle him to relief [because] such a rule would not absolve a defendant of his obligation to raise the claim on direct appeal, rather than collateral attack." Resp. Br. at 72. Although respondent does not expressly say so, this argument appears to be another effort to revive the procedural bar defense that was rejected by the CCA during the Rule 32 appeal. As respondent itself concedes earlier in its brief, however, "[t]he Alabama Court of Criminal Appeals . . . addressed the claims on the merits." Resp. Br. at 70. This merits disposition by the state court forecloses respondent's procedural defense. *See*, *e.g.*, *Harris v. Reed*, 489 U.S. at 262 ("a federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default"); *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (to prevent merits review in federal habeas, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case").

Second, respondent contends that "Freeman cannot demonstrate that the Alabama Court of Criminal Appeals [sic] decision that *Ring* was inapplicable . . . was contrary to, or involved an unreasonable application of, clearly established Federal law . . . . Because the Supreme Court has held that *Ring* claims are not retroactive – and has never held that an exception exists for convictions that were not final when *Apprendi* was decided – the right of Freeman to raise an [sic] *Ring* claim in his Rule 32 petition was not clearly established when the Alabama Court of Criminal Appeals held that the claim was unavailable." Resp. Br. at 73. As noted in petitioner's earlier brief, this argument is misguided. *See* Pet'r. Br. at 212 n.95. The retroactivity issue resolved against petitioner by the CCA was a procedural defense, not a part of the merits of petitioner's constitutional claim. *See*, *e.g.*,

*Lambrix v. Singletary*, 520 U.S. 518 (1997) (explaining that "the *Teague* issue should be addressed before considering the merits of the claim"); *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (noting that "a State can waive the *Teague* bar by not raising it," and recognizing distinction between "reaching the merits of a dispute" and barrier to doing so posed by timely raised "*Teague* defense"). Because it occurs at a point anterior to, and is decidedly not a part of, a state court's merits analysis, the retroactivity question for which respondent seeks to invoke §2254(d) is, by definition, excluded from that statute's coverage. *See* §2254(d) ("An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless . . .") (emphasis added).

Finally, respondent asserts that "the argument that *Ring* and *Summerlin* can be distinguished under the facts of this case was never presented in state court. The state courts cannot be faulted to [sic] failing to *sua sponte* consider a novel argument that, it appears, had never been offered by Freeman or passed upon in any published decision by any court. Freeman therefore cannot receive relief." Resp. Br. at 73. Although respondent does not say why it is that "Freeman therefore cannot receive relief," petitioner assumes respondent means to invoke some sort of procedural bar to this Court's consideration of his retroactivity arguments. If that is what respondent intends, it is once again mistaken. As respondent's omission of any citation to any legal authority on this point suggests, there is no precedent for applying anything akin to a fair presentation requirement to challenges to a state court's rulings on procedural defenses.[10]

_____

[10]Indeed, the closest the Supreme Court has come to establishing such a requirement is its holding in *Edwards v. Carpenter*, 529 U.S. 446 (2000), that an ineffective assistance of counsel claim alleged as "cause" to overcome the procedural default of a separate claim must itself be properly exhausted in state court. There, the Court explained that "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an

## CONCLUSION

Wherefore, for these additional reasons, petitioner prays that the Court:

(a)  issue an order to have him brought before it, to the end that he may be discharged from the unconstitutional confinement and restraint;

(b)  conduct a hearing at an appropriately scheduled time where proof may be offered and argument advanced concerning the allegations set forth in this brief; and

(c)  grant such other relief as may be necessary and appropriate.

Respectfully Submitted,

s/Keir M. Weyble
**KEIR M. WEYBLE**
Blume Weyble & Norris, LLC
P.O. Box 11744
Columbia, SC 29211
TEL:  (803) 765-1044
FAX:  (803) 765-1143
E-Mail: keir@blumelaw.com

s/Christopher Seeds
**CHRISTOPHER SEEDS**
P.O. Box 6725
FDR Station
New York, NY 10150
TEL:  (917) 837-6760
E-Mail: chrisseeds@gmail.com

s/Robin C. Konrad
**ROBIN C. KONRAD**
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407

---

independent constitutional claim," and "the principles of comity and federalism that underlie [the] longstanding exhaustion doctrine . . . require that constitutional claim, like others, to be first raised in state court." *Edwards*, 529 U.S. at 451.  The retroactivity issue discussed by respondent, however, does not hold the status of "independent constitutional claim" that was essential to the result reached in *Edwards*, and it therefore does not implicate comity and federalism interests in a way that would require exhaustion.

Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: robin_konrad@fd.org

Counsel for David Freeman

September 4, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael Nunnelly, Esq.
Attn: Capital Litigation Division
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130

**s/Keir M. Weyble**
**KEIR M. WEYBLE**
 Blume Weyble & Norris, LLC
 P.O. Box 11744
 Columbia, SC 29211
 TEL: (803) 765-1044
 FAX: (803) 765-1143

Counsel for David Freeman